MADS C. MONSON

v.

MERRITT C. BRAGDON *et al.*

*Filed at Ottawa November 25, 1895.*

1. VENDOR AND PURCHASER—*right of forfeiture may be waived by* conduct. The right to declare a forfeiture of a contract for real property because of non-compliance with its terms in making prompt payment, where time is of the essence of the contract, may be waived by conduct of the vendor in dealing with the vendee.

2. SAME—*right of forfeiture once waived cannot be insisted upon without specific notice.* A definite and specific notice of an intention to insist upon a forfeiture of a contract for real property is necessary before the forfeiture can be declared, when the right to declare it has been waived or temporarily suspended by electing not to enforce it.

3. CONTRACT—*effect of refusal of tender on ground of forfeiture.* The refusal to accept a tender of performance of a contract, based solely upon a claim of forfeiture, makes it immaterial whether such tender strictly conformed to the contract.

4. APPEALS AND ERRORS—*point that remedy is at law will not be first heard on appeal.* The existence of a remedy at law cannot be set up, on appeal, to defeat an injunction, when it was not presented by way of demurrer or answer to the bill.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

CONSIDER H. WILLETT, for plaintiff in error:

Where there are defaults in making payments by the vendee, which are waived by the vendor, the vendor can not declare an immediate forfeiture of the contract, but must give a reasonable notice of his intention to forfeit, during which the vendee may make compliance with his contract. *Allen* v. *Woodruff*, 96 Ill. 11; *Palmer* v. *Ford*, 70 id. 369; *Peck* v. *Brighton Co.* 69 id. 200; *Morgan* v. *Herrick*, 21 id. 481; *Bishop* v. *Newton*, 20 id. 175; *Glover* v. *Fisher*, 11 id. 666; *Upperton* v. *Nicholson*, L. R. 6 Ch. 436; *Webb* v. *Hughes*, L. R. 10 Eq. 286; *King* v. *Wilson*, 6 Beav. 124.

The tender of the deed is necessary before the vendor can forfeit his contract.    *Mix* v. *Beach,* 46 Ill. 300; Boone on Real Prop. sec. 385.

Smoot & Eyer, for defendants in error:

The vendee must show that he has performed all that was required of him by the terms of the contract, or that he has been ready, willing and anxious to perform. *Phelps* v. *Railway Co.* 63 Ill. 468; *Kimball* v. *Tooke,* 70 id. 553; *Beach* v. *Dyer,* 93 id. 295; *Short* v. *Kieffer,* 142 id. 258; *Ditto* v. *Harding,* 73 id. 117; *Gas Co.* v. *Town of Lake,* 130 id. 42.

Parties have a right to make time of the essence of the contract, and the courts will not change the contract, but will enforce it as made.    *Chrisman* v. *Miller,* 21 Ill. 226; *Milnor* v. *Willard,* 34 id. 38; *Bostwick* v. *Hess,* 80 id. 138; *Warren* v. *Richmond,* 53 id. 52; *Heckard* v. *Sayre,* 34 id. 142.

Possession by the vendee does not preclude the vendor from forfeiting the contract.    *Beach* v. *Dyer,* 93 Ill. 295; *Chrisman* v. *Miller,* 21 id. 226; *Cunningham* v. *Railroad Co.* 77 id. 178; *Warren* v. *Richmond,* 53 id. 52.

Acceptance of payments after due does not operate to deprive the vendor of the right to forfeit for future payments, if not made at the time specified in the contract. *Cunningham* v. *Railroad Co.* 77 Ill. 178; *Iglehart* v. *Gibson,* 56 id. 81; *Phelps* v. *Railroad Co.* 63 id. 468; *Stowe* v. *Russell,* 36 id. 18.

Mr. Justice Wilkin delivered the opinion of the court:

This is a bill by plaintiff in error, against defendants in error, for the specific performance of a contract, and to enjoin an action of forcible entry and detainer.    It alleges that on September 5, 1890, the defendant Bragdon owned lot 14, block 1, in G. M. Huntoon's addition to South Evanston, Cook county, Illinois, with a cottage thereon, which he on that day sold to complainant for $1400,—$50 in cash and the remainder in $15 payments, with interest, payable at Bragdon's office on the first day

of each month, complainant to be entitled to a warranty deed when he had paid $500 or more, and that it was afterwards agreed between the parties that the payments might be made quarterly instead of monthly. It then avers payment of $60 January 9, 1891, $128.70 July 10, 1891, and $192 February 27, 1892, to Bragdon, and $26.18 special assessment and $10.38 general taxes, which were liens on the property at the time of purchase; also, that on September 23, 1892, after office hours, Bragdon served complainant with notice of the forfeiture of the contract for non-performance of its terms, and demanding possession of the property; that on the next morning complainant went to Bragdon about the matter, but was referred by him to his attorney, Eyre ; that he thereupon informed said attorney that he desired to comply with the terms of the contract, but was informed that he could not do so as the papers had been placed upon record, and that he on the same day found on record a deed of that date, from Bragdon to Eyre, for the property. It is then averred that this deed was without consideration, and with full knowledge of the rights of complainant; that on October 3 Eyre began an action of forcible entry and detainer against complainant's tenant in possession of the property; that on October 8 complainant tendered the amount due under the contract to Bragdon, and demanded from him a deed to the premises, which was refused. The bill also states that complainant has been, and still is, ready and willing to comply with the terms of the agreement. It appears from the contract, made an exhibit to the bill, that "in case of the failure of the said party of the second part to make either of the payments or any part thereof, or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by

the said party of the first part in full satisfaction and in liquidation of all damages sustained by him, and he shall have the right to re-enter and take possession of the premises. It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract." The prayer is for a specific performance, and for a writ of injunction restraining the prosecution of the action of forcible entry and detainer.

The defendant Bragdon answered the bill, admitting the making and modification of the agreement substantially as alleged in the bill, and the payment of $50 in cash; also admitting the subsequent payments alleged in the bill, which he says were applied by him upon the payment of interest and the sums due under the contract; denies that he was liable for the special assessment alleged to have been paid by complainant; admits the service of notice of forfeiture, and that he transferred the property to Eyre for the purpose merely of facilitating the bringing of the action of forcible entry and detainer. He expressly denies the tender of performance on the part of complainant or that he has been ready and willing to fulfill the contract, and avers that after March 1, 1892, he refused to pay any money on the same; that up to the time of the forfeiture he had failed to pay taxes on the premises due April 30, 1892, and permitted the same to be sold; that he failed to pay an assessment on the property in favor of the village of South Evanston, and permitted the property to be sold to a tax buyer for an amount, with interest and penalties, aggregating $74.44; that during the whole time of said contract said complainant has failed to make payments promptly, and has done so only upon repeated urging by Bragdon. Eyre also answered the bill substantially as did Bragdon.

On October 12, 1893, the master, to whom the cause had been referred to take the proofs and state his findings and conclusions of law, reported the evidence and recommended the dismissal of the bill. Exceptions to

this report being overruled, the court entered its decree in conformity therewith, at the same time granting leave to the defendants to file suggestions of damages. At a subsequent day of that term the suggestions were filed as of the date of the order dismissing the bill. No formal order was entered continuing the cause at that term, but at the February term following, a hearing was had upon the suggestions of damages and the defendants allowed the sum of $176. Complainant below prosecutes this writ of error, and insists that the Superior Court erred in dismissing his bill, and also in the assessment of damages upon the dissolution of the injunction.

The correctness of the decree below in dismissing the bill depends, first, upon whether defendant in error Bragdon had a right, under the contract and facts shown, to declare a forfeiture on the 23d day of September, 1892; and second, if he did not, was there a sufficient tender or offer of performance on the part of plaintiff in error proved to entitle him to a specific performance of the contract. If the forfeiture was properly declared, it is clear that the subsequent offer to perform, however strictly in compliance with the terms and conditions of the agreement, would avail nothing to plaintiff in error; and even though the forfeiture was unauthorized, under the well settled rules of law a specific performance could only be enforced by the complainant below upon proof that he had in all respects performed or offered to perform the terms and conditions of the agreement on his part.

The right to declare the forfeiture, if it existed at all, must be based upon the failure to make payments after February 27, 1892, for while the payments made at that time, and previously, were not in strict compliance with the contract as to time, yet having been accepted by Bragdon he could not afterwards insist upon a forfeiture of the contract because they were not made promptly at the time agreed upon, notwithstanding time was of the essence of the agreement. It is well settled by our previ-

ous decisions, that although the vendor in a contract like
this may have the right to declare a forfeiture for non-
compliance with its terms in making prompt payment,
time being made of the essence of the contract that right
may be waived by his conduct in dealing with the vendee.
Thus, we said in *Watson* v. *White*, 152 Ill. 364, the contract
then before the court being substantially, if not literally,
like the one between these parties (p. 372): "But an
agreement that time shall be of the essence of a contract
may be waived or set aside, and more especially so in
the contemplation of a court of chancery, either by the
mutual consent or conduct of the parties, or by the con-
sent or conduct of the party in whose favor and for whose
benefit such stipulation is made,"—citing authorities. In
the cause before us the evidence clearly shows such a
waiver by the defendant Bragdon. He not only accepted
payments, from time to time, not made in conformity with
the contract, but at least in one instance, by a written
communication to Monson inquiring whether he desired
to abandon the contract, manifested his disposition to
not insist upon time being of the essence of the contract.
While, as was held in *Watson* v. *White*, *supra*, his conduct
was not necessarily an absolute permanent waiver, yet
in a court of equity there was at least such a temporary
suspension of the right as could only be restored by his
giving a definite and specific notice of an intention to
that effect. The only pretense of such notice is that, as
found by the master, after default in the payment for the
quarter ending June 5, 1892, a letter dated the 24th of the
same month was sent by Bragdon to Monson, stating:
"Please pay up what is due on our contract, and don't
wait for me to dun you every time, for I dislike to do it.
I guess we had better go back to the plan of the contract
and have monthly payments." Complainant made no re-
sponse and no payments. No further demand was made
by Bragdon until service of notice of forfeiture, Septem-
ber 23, 1892. Instead of the letter in any way indicating

an intention to declare a forfeiture if payment was not made, it was calculated to lead Monson to understand exactly the contrary. There is a request to pay up without being dunned, because to do so is distasteful to the writer, and a suggestion that they go back to the original plan of the contract and have monthly payments, clearly indicating a willingness to allow the contract to continue notwithstanding the dereliction of Monson. The next intimation that Monson has of dissatisfaction with his failure to pay is the declaration of forfeiture. It need scarcely be said that these facts are not sufficient to overcome the well established rule that forfeitures will never be allowed in courts of equity except where the right is clearly and unequivocally shown. The forfeiture was void and of no effect upon the rights of the parties.

Treating the agreement, then, as continuing in full force and effect at the time this bill was filed, has the complainant shown himself entitled to its specific performance? The master found, and stated in his report, that on September 24, being the next day after the attempted declaration of forfeiture, he called on Bragdon at his office in Evanston and was informed that he had sold the property to Eyre, and afterwards, meeting Eyre on the street, he informed him that he was ready to make his payments in full, and Eyre told him he was too late; that on September 26 Eyre demanded possession of the property; that on October 8 complainant again called upon Bragdon and made an offer to pay him on said original contract the sum of $150, making a tender of that amount in gold, and also the tender of a trust deed and notes for the balance of payments, which he declined to receive, referring him to Eyre, and that thereupon he tendered Eyre $145 in gold and a trust deed, which Eyre refused. As before stated, there is also an offer in the bill to comply with all the terms and conditions of the contract. In our view of the case it is not necessary to determine whether these offers were in strict conformity

with the provisions of the contract, for the reason that it clearly appears, and is not denied, that the refusal to accept them was not upon that ground, but because, as stated by Eyre, it was too late, Bragdon, relying upon the forfeiture as relieving him from further liability on his contract, having put the title out of his own hands and into Eyre's, and taken steps, by suit at law, to recover possession of the property. The general rule is, that "to entitle a purchaser to demand a deed and maintain a bill for specific performance, it is sufficient that he is ready and offers to pay any sum that may be found to be due and still unpaid, and to comply with the contract on his part." *Watson* v. *White, supra,* (on p. 378,) and cases cited.

As to the right of the complainant to enjoin the action of forcible entry and detainer, but one objection, under the foregoing view of the case, could have been successfully interposed, and that would have been that there was a complete remedy at law by stating the facts in defense; and that objection, to be availed of, must have been set up by way of demurrer or answer to the bill, which was not done.

We are of the opinion, therefore, that the Superior Court erred in dismissing the bill and dissolving the injunction, and should have entered its decree in conformity with the prayer by ordering a conveyance of the property upon compliance by Monson with the terms of the contract, and perpetually enjoining the prosecution of the action of forcible entry and detainer. It follows that the assessment of damages on account of suing out the injunction is also erroneous.

The decree of the Superior Court will be reversed, and the cause remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*