Argued October 14, decided October 21, 1913.

# GRAY *v.* PELTON.

(135 Pac. 755.)

**Vendor and Purchaser—Contracts—Rights of Purchaser—Rights of Assignee.**

1. One who buys a purchaser's rights in land under a contract for the sale thereof which stipulates for payment in installments on designated dates, and which makes time of the essence, and declares that a failure to make the payments shall work a forfeiture, only acquires the rights of the purchaser.

**Vendor and Purchaser—Contracts—Time of the Essence.**

2. A contract for the purchase of real estate which stipulates for specified payments on designated dates, and which provides that, if the purchaser fails to make any of the payments at the time specified, his rights shall be forfeited, makes time of the essence, and a default in a payment called for works a forfeiture, unless the vendor waives the default.

**Vendor and Purchaser—Contracts—Forfeiture—Waiver.**

3. A vendor entitled to forfeit a contract for nonpayment of installments may waive his right either by express agreement or by acts affording reasonable inducement for the purchaser, in reliance thereon, to alter his course as to strict compliance either in advance of or after the prescribed time, and the conduct of the vendor operates as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting, the stipulation that time shall be of the essence being solely for his benefit.

**Vendor and Purchaser—Contracts—Waiver of Stipulation—Effect—Notice.**

4. A vendor who waives a stipulation that time for the payments of the price in installments is of the essence cannot insist on a forfeiture for nonpayment without giving notice to the purchaser and an opportunity to comply therewith.

**Vendor and Purchaser—Contracts of Sale—Default—Waiver.**

5. While a vendor's waiver of a default in one payment of an installment will not operate as a waiver of a subsequent failure, the court must consider all the circumstances and the conduct of the parties in their dealings to determine whether the vendor has waived the stipulation that time is of the essence.

**Vendor and Purchaser—Contracts of Sale—Default—Waiver.**

6. Where a vendor in a contract calling for payments on designated dates, and making time of the essence, clearly indicated that he intended to be lenient in the matter of payments, and did not require a strict compliance in making some of the payments, and thereby the purchaser and his assignee believed that future payments on the exact

dates named in the contract would not be required, and the conduct of the vendor was consistent only with a purpose on his part to regard the contract as subsisting after the first default, he waived his right to declare a forfeiture, and to avail himself of the time clause he must give the purchaser a reasonable and specific notice to comply with his agreement and make payment.

From Jackson: FRANK M. CALKINS, Judge.

Department 2. Statement by MR. JUSTICE BEAN.

This is a suit by R. W. Gray against Lottie L. Pelton, Guy C. Jacobs, Mabel G. Jacobs, his wife, H. M. Coss, Medford National Bank, a national banking corporation, and Albert Bailey, to enforce the performance of a contract to deliver a deed to certain lands. From a decree in favor of defendants, plaintiff appeals.

On October 3, 1908, defendants Lottie L. Pelton, Guy C. Jacobs, and Mabel G. Jacobs were the owners of the lands in question. One B. C. Gleason offered to pay $2,092 therefor, which Mrs. Lottie L. Pelton, on behalf of the owners, agreed to accept. Gleason not then being prepared to pay the entire consideration, and Mrs. Pelton not desiring to convey the title until the purchase price was paid, a deed to Gleason was executed and acknowledged in consideration of the premises. The same was sealed in an envelope with the following agreement indorsed thereon:

"Lottie L. Pelton to B. C. Gleason.

"Escrow Contract.

"The Medford National Bank is hereby directed to deliver the inclosed deed to B. C. Gleason whenever he shall have paid into said bank, subject to my order, the sum of $2,092.00 U. S. gold coin as follows, to wit: $200 on or before the 13th day of October, 1908; $590 on or before the 1st day of November, 1908; $772 on or before the 1st day of November, 1909; and $530 on or before the 1st day of November, 1910. And if he shall fail to make any of said payments strictly in the man-

ner and at or before the time herein specified, then this agreement and the inclosed deed shall, on demand, be forthwith returned to me; it being hereby understood that upon such failure said B. C. Gleason shall thereby forfeit all right in law or equity to said, or any, deed to said land, and to all sums of money which he may already have paid thereon, and the same shall belong to me absolutely, and I shall be released from all obligation in either law or equity to convey said land to said B. C. Gleason or to his heirs or assigns, or to return to him any part of the purchase price paid thereon; it being hereby understood that time is of the essence of this escrow contract. This shall bind my heirs and assigns.

"Witness my hand, this 3d day of Oct. 1908.
"LOTTIE L. PELTON.
"State of Oregon,
County of Jackson—ss.:

"I hereby certify that I have read the foregoing escrow contract, and understand its terms and conditions, and hereby accept the same.

"Witness my hand this 3d day of Oct., 1908.
"B. C. GLEASON."

Gleason was let into possession of the lands which he and his grantees have since retained. It is conceded that Mrs. Pelton acted for the other grantors in making the contract. Gleason made payments for the land as follows: $25 on October 3, 1908; $175 on October 16, 1908; $500 on November 4, 1908. He testified that on December 19, 1910, he conveyed his interest in the lands and contract to Gray in exchange for other property worth between $4,000 and $5,000; that when he paid the $500 he wrote Mrs. Pelton, advising her of the deposit thereof in the bank, asking if it would be satisfactory if he paid the balance of $90 later; that Mrs. Pelton answered, saying that he could make the balance of the payment at his convenience. Gleason

67 Or.—16

further stated that when he traded with Gray he informed the latter of this. Mrs. Pelton testified that after the November, 1909, payment was due she wrote Gleason a "dun letter," stating as near as she could tell that she would like to have some money when convenient. On November 25, 1909, Gleason answered Mrs. Pelton's letter, stating that he had sold the land to Gray almost a year before. About January 10, 1910, no further payments having been made on the land, Mrs. Pelton notified the bank not to receive any more payments on the contract, and that she desired to withdraw the deed from escrow. Thereupon the bank requested her to allow the deed to remain until the consent of plaintiff could be obtained. Defendant Coss, who was the agent for Mrs. Pelton in making the sale of the land to Gleason, and cognizant of all the circumstances in regard thereto, about this time as the agent of defendant Bailey purchased the land of Mrs. Pelton and her daughter at an increase in price of $2.50 per acre over the amount agreed to be paid by Gleason. Soon after Bailey conveyed the land to defendant Coss, therefore Coss and Bailey had notice of the equities of the plaintiff, and that transaction does not affect this case. The bank notified Gleason that a return of the deed was desired by Mrs. Pelton because his November, 1909, payment had not been made. Plaintiff, on January 12, 1910, deposited in the bank for Mrs. Pelton, $1,425.86, the balance due and to become due upon the contract, with interest, and demanded the deed. Mrs. Pelton then demanded the return of the deed by the bank, and instituted an action for the possession thereof. Sometime between the 1st and 10th of January, 1910, W. T. York, a real estate dealer of Medford, as he testified, desiring to negotiate a sale of the land, went to Ashland, where Mrs. Pelton resided, to see her in regard to selling the

same; that she informed him that Mr. Gray had purchased the land; that there was a payment past due; that Gray had not made all of his payments; that she did not want to force the matter, but that she must have her money soon. York stated that he told Gray of the conversation the same evening. This evidence is not contradicted.

REVERSED: DECREE RENDERED.

For appellant there was a brief and an oral argument by *Mr. A. E. Reames.*

For respondents there was a brief over the names of *Mr. W. E. Crews* and *Mr. H. K. Hanna, Jr.,* with an oral argument by *Mr. Crews.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Plaintiff maintains that the stipulation in the contract that time is of the essence thereof was waived by the parties, and that he is entitled to the deed. The defendants contend the reverse, and claim a forfeiture by reason of the nonpayment according to the express terms of the contract. The contract is with B. C. Gleason and his heirs or assigns. Gray stands in Gleason's shoes, and is entitled to the same right as to the land that Gleason would have had if he had not conveyed to Gray; no more, no less.

2-5. The provisions of the contract in regard to the making of payments by the vendee or his assigns are very explicit and positive, to the effect that, if he failed to make such payments strictly in the manner and at or before the time specified, his right would be forfeited. Time was made of the essence of the contract. The case of *Maffet* v. *Oregon & Cal. R. Co.,* 46 Or. 443, at page 454 (80 Pac. 489), is authority that, by the adjudications, both at law and in equity, the effect of

such a time essence stipulation, terminating the contract upon a failure to comply strictly and punctually with its conditions, is to entail a forfeiture by sheer force of the contract itself upon the mere default of the purchaser upon his failure to make payments at the times designated as he obligated himself to do, unless the vendor waives the default or subsequent forfeiture, which he has a right to do. This he may do by express agreement to that effect, or by unequivocal acts or demeanor affording reasonable and proper inducement for the purchaser in reliance thereon to alter his course as to strict and punctual compliance, either in advance of or after the prescribed time. The stipulation that time shall be of the essence of the contract is made solely for the benefit of the vendor. The conduct of such vendor will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting: Pomeroy, Contracts, § 394; 2 Warvell, Vendors, § 819; *Boone* v. *Templeman,* 158 Cal. 290, 295 (110 Pac. 947, 139 Am. St. Rep. 126); *Smiley* v. *Barker,* 83 Fed. 684 (28 C. C. A. 9). After a vendor waives a stipulation that time is of the essence of the contract, such stipulation cannot be insisted upon without notice and opportunity of compliance: *Graham* v. *Merchant,* 43 Or. 294, 306 (72 Pac. 1088). While a waiver of a default in one payment would not operate as a waiver of a subsequent failure, the court should consider all the circumstances and the conduct of the parties in their dealings and treatment of the contract.

6. The question arises in this case, Did Mrs. Pelton and the other grantors waive their right to insist on a strict compliance with the terms of the contract? From the beginning the parties to this contract appear to have treated the same as though the deed was simply held for Mrs. Pelton and her cograntors as security for the payment of the balance due upon the purchase

price. Her own testimony as to the letter to Mr.
Gleason, and her statement to Mr. York, the real estate
dealer, clearly indicate that she intended to be lenient
in the matter. She had not, therefore, required a
strict compliance with the terms of the contract in
making either of the prior payments. The natural
consequence would be to lull Gleason and Gray, his
assignee, into a sense of security, and cause them to
believe that payments upon the exact date named in
the contract would not be required. The conduct of
Mrs. Pelton and the other vendors was consistent only
with a purpose on their part to regard the contract
as still subsisting after the default in the payment due
November 1, 1909. Her letter to Mr. Gleason, evi-
dently written a short time before November 25, 1909,
indicated that, if payment were then made, it would be
accepted, and, if not, that leniency would be shown,
clearly treating the contract as being then in force.
The contract was in force at that time, or else Mrs.
Pelton had no right to ask for a payment to be made.
They failed to claim their right of forfeiture promptly,
and for more than one year and two months after the
nonpayment of the $90 due on the second payment, and
for more than two months after the third payment
was due. By such contract and failure the time clause
in the contract was temporarily waived or suspended,
and the grantees could not thereafter suddenly insist
on a forfeiture. But they must, in order to avail
themselves of the time clause, give Gray, the vendee,
a reasonable, definite and specific notice to comply with
his part of the agreement and make payment: *Graham*
v. *Merchant,* 43 Or. 294 (72 Pac. 1088); *Sehlbrede* v.
*State Land Board,* 46 Or. 615 (81 Pac. 702); *Maffet*
v. *Oregon & Cal. R. Co.,* 46 Or. 443 (80 Pac. 489). In
the latter case, which was a law action, where a stricter
rule is applied than in a suit in equity, Mr. Justice
WOLVERTON, speaking for the court, said: "But if the

waiver was once accomplished, the vendor could not again assume the original relations, and insist upon a forfeiture, unless upon a subsequent default, not within the purview of the waiver, without giving the purchasers proper notice of its intention so to do and a reasonable time in which to comply with the demand for payment"—citing *Watson* v. *White,* 152 Ill. 364 (38 N. E. 902) ; *Monson* v. *Bragdon,*159 Ill. 61.

In *Miles* v. *Hemenway,* 59 Or. 318, 339 (111 Pac. 696, 117 Pac. 273), this court held that the right to declare a forfeiture had been waived, and that the vendor could not afterward insist upon a forfeiture without giving reasonable notice to the vendee, and making a new demand for the payment of the balance due on the purchase price. *Stevinson* v. *Joy,* 164 Cal. 279 (128 Pac. 751), was a case where land was sold on payments of two dollars per week. The contract provided that: "Time and punctuality are hereby made material to and of the essence of this option. * * No waiver of times of payments for continuance of option shall be valid in favor of the first party unless reduced to writing and subscribed by the second party thereto." No such written waiver was ever made. In 164 Cal. 285 (128 Pac. 753, 754), in the opinion, the court said: "The true rule is firmly established and recognized by all the authorities. Where time is made of the essence of the contract for the payment of rent or other payments of money, and this covenant has been waived by the acceptance of the rent or other moneys after they are due, and with knowledge of the facts, such conduct will be regarded as creating 'such a temporary suspension of the right of forfeiture as could only be restored by giving a definite and specific notice of an intention to enforce it' ": See *Barnett* v. *Sussman,* 116 App. Div. (N. Y.) 859 (102 N. Y. Supp. 287). 1 Sugden, Vendors, page 417, states the rule quoted in *Boone* v. *Templeman,* 158 Cal. 290 (110 Pac. 947, 139 Am. St.

Rep. 126), as follows: "Although time be made of the essence of the contract, yet the condition may be waived, just as in an ordinary case; but, if the purchase money is to be paid by installments, each breach in nonpayment is a new breach of the agreement, and gives to the seller a right to rescind the contract, but that right should be asserted the moment the breach occurs." In *Monson* v. *Bragdon,* 159 Ill. 61, 66 (42 N. E. 383, 385), upon a similar state of facts, the court said: "While * * not necessarily an absolute permanent waiver, yet in a court of equity there was at least such a temporary suspension of the right (of forfeiture) as could only be restored by his giving a definite and specific notice of an intention to that effect."

There is some contrariety of opinion as to when, and under what conditions, equity will relieve against a default in punctual payment, even though time may seem to be made of the essence of the contract: 1 Pomeroy, Eq. Jur. 454. The parties themselves in the case at bar have never construed the terms of the contract in question literally in their dealings. Mrs. Pelton has not insisted upon payments being made punctually at the times specified in the contract, and a court of equity should not treat the matter any more harshly than she did prior to the time she suddenly demanded a forfeiture. Mrs. Pelton and the other vendors wholly failed to give plaintiff the notice required.

The decree of the lower court will therefore be reversed, and one entered here in accordance with the prayer of the complaint.

REVERSED: DECREE RENDERED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.