DENNIS O'CONNOR *vs.* JOHN HUGHES.

July 15, 1886.

**Vendor and Purchaser—Contract—Strict Performance—Election by Vendor.**—A contract for the sale of land prescribed definite times for the payment of the purchase price, and contained terms which, standing alone, imported an agreement for strict performance, and that the times specified for payment should be deemed to be of the essence of the contract; but it further provided that, in case of any default in such strict performance, the vendor should *have the right to declare the contract null and void.* It was further agreed that all overdue payments should bear an increased rate of interest. *Held*, that the contract gave to the vendor the election to determine whether strict performance should be required; that, in the absence of a determination to require strict performance, and

. of reasonable notice of such election, the mere default of the vendee to make the specified payments would not operate to extinguish his equitable rights; and a subsequent declaration of forfeiture by the vendor, without notice and reasonable opportunity to make payment, was also ineffectual.

Appeal by plaintiff from an order of the district court for Sibley county, *Macdonald*, J., presiding, refusing a new trial, after a trial by the court, without a jury.

*Cadwell & Parker* and *C. B. Palmer*, for appellant.

*S. & O. Kipp & Russell*, for respondent.

DICKINSON, J.   Action of ejectment.   Both parties claim under the St. Paul & Sioux City Railroad Company.   The defendant is in possession as purchaser under a contract for purchase from that company, entered into in May, 1882.   The plaintiff asserts a title under a deed of conveyance from the same company, made in July, 1884. The question in the case is as to whether the defendant's rights under his contract had been forfeited and extinguished at the time of the conveyance to the plaintiff, by reason of default in making payments as required by his contract.   By the terms of the contract the defendant was to pay $100 down, which was done; $100 January 1, 1883; $150, and interest at the rate of 7 per cent., May 22, 1883; and the remainder of the price in annual instalments thereafter, with interest at the same rate.   The contract contained provisions that all overdue payments should bear interest at the rate of 10 per cent. per annum; this last provision being inserted in writing, the contract being mostly printed.   It further provided for punctual payment, and strict and literal performance, at the times specified; and further, in substance, that if the defendant should fail to make such payment punctually, and upon the strict terms and times specified,—the time of payment being stated to be of the essence of the contract,—the company should have the right to declare the contract null and void, and all right and interest of the defendant derived under the contract should utterly cease, and the premises revest in the railroad company, without any declaration of forfeiture or act of re-entry.

In July, 1884, the defendant had failed to make any of the three payments falling due prior to that time and subsequent to the making of the contract, but had made considerable improvements upon

the land, and it is now worth much more than the unpaid contract price. The defendant's default was in consequence of his financial distress. The plaintiff, actually knowing of the defendant's possession under his contract, went to the railroad company to purchase the land in July, 1884. The company then, without notice to the defendant, assumed to cancel his contract, sold the property to the plaintiff, and then notified the defendant of its action. At that time the defendant could and would, if he had been allowed to do so, have paid what was due upon the contract, and he has ever since been and is ready and willing to do so.

It appears upon the face of the contract, under the plainest construction of its terms, that while it was intended to empower the railroad company to compel a strict compliance with the specified conditions as to payment, yet the mere default of the defendant was not of itself to terminate the contract, and work a forfeiture of the defendant's rights, unless the other party should *elect* to insist upon a strict performance, according to the specified terms. *Coles* v. *Shepard,* 30 Minn. 446, (16 N. W. Rep. 153.) That the continuance of this contract in force was, in the contemplation of the parties, and by the very terms of their agreement, to depend, not merely upon payment being made strictly at the times specified, but also upon the election of the vendor, is apparent, not only from the provision that upon default the vendor "*shall have the right to declare*" the contract annulled, but also from that making *overdue instalments* to bear an increased rate of interest.

Since the rights of the vendee were thus made to depend upon the fact as to whether the vendor should determine to insist upon exact compliance with the terms of payment, it would be neither equitable nor in accordance with a reasonable construction of the contract itself that an election to insist upon strict performance should be secretly and summarily made, and have the effect to make default alone to work a forfeiture. The vendee should be seasonably advised of the determination of the vendor, so that he might have reasonable opportunity to comply with the requirements of the contract, made absolute and strict only by the election of the adverse party. *Quinn* v. *Olson,* 34 Minn. 422, (26 N. W. Rep. 230;) Pom. Cont. § 393.

Such notice might have been given before the time named for payment, or, if not so made, notice might have been given after default, fixing a further reasonable time within which payment would be required; but the rights of the purchaser under a contract not absolutely terminated could not be extinguished by a summary declaration of forfeiture. *Quinn* v. *Olson, supra; Austin* v. *Wacks,* 30 Minn. 335, 340, (15 N. W. Rep. 409;) Pom. Cont. §§ 395, 396.

The mere failure of defendant, therefore, to make payment at the times named therefor, did not extinguish his equitable rights under the contract; nor does it appear that when the vendor assumed summarily to cancel the contract, anything had been done or had occurred—as by notice, such as we have spoken of, or otherwise— which of itself would have the effect to terminate the contract, or to render it inequitable that specific performance should be required of the vendor.

The decision of the trial court, recognizing the equitable right of the purchaser to now perform the contract by payment, and declaring the title in the plaintiff to be subject to that equity, was faultless, and the order refusing a new trial is affirmed.