MOODY v. EASTERN OREGON LAND CO.

(Circuit Court, D. Oregon.    July 5, 1910.)

No. 3,118.

1. SPECIFIC PERFORMANCE (§ 94*)—PERFORMANCE BY PLAINTIFF.
   One suing to specifically perform a contract to convey must show substantial compliance with his obligations or waiver thereof by vendor.
   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 249–256;  Dec. Dig. § 94.*]

2. SPECIFIC PERFORMANCE (§ 117*)—DEFENSE—PLEADING.
   On suit to specifically perform a contract to convey, a vendor cannot complain of purchaser's failure to show payment of taxes as required by the agreement, where no issue on that point is made by the pleadings.
   [Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 117.*]

3. VENDOR AND PURCHASER (§ 335*)—CONTRACT TO CONVEY—FORFEITURE.
   Where a contract to convey does not provide for forfeiture on purchaser's failure to make stipulated payments when due, no forfeiture results ipso facto from such default; it being necessary for the vendor to signify to the purchaser a purpose to insist on surrender.
   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 981;  Dec. Dig. § 335.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. VENDOR AND PURCHASER (§ 269*)—CONTRACT TO CONVEY—PLAINTIFF'S DE-
FAULT—VENDOR'S REMEDIES.

Where a contract to convey does not provide for forfeiture on the pur-
chaser's failure to make stipulated payments when due, on such default
the vendor may elect to retake possession and sue in ejectment; or sue to
foreclose contract and recover the balance due on the purchase price or
sue to cancel the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. §
269.*]

5. VENDOR AND PURCHASER (§ 187*)—CONTRACT TO CONVEY—PURCHASER'S DE-
FAULT—WAIVER.

The purchaser's default in making stipulated payments under a con-
tract to convey may be expressly waived by agreement or impliedly by
the vendor's acts relied on by the purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§
374, 375; Dec. Dig. § 187.*]

6. VENDOR AND PURCHASER (§ 187*)—CONTRACT TO CONVEY—PURCHASER'S DE-
FAULT—WAIVER—ACCEPTANCE OF PAYMENT.

Purchaser's default in making stipulated payments under a contract to
convey is waived by the vendor afterwards accepting payment.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§
374, 375; Dec. Dig. § 187.*]

7. VENDOR AND PURCHASER (§ 299*)—CONTRACT TO CONVEY—PURCHASER'S DE-
FAULT—WAIVER.

Demand for possession by a vendor under a contract to convey on the
purchaser's default in making stipulated payments being waived by sub-
sequent acceptance of a payment, another demand was necessary before
the vendor could rescind the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §
838; Dec. Dig. § 299.*]

8. PRINCIPAL AND AGENT (§ 123*)—AGENT'S AUTHORITY—EVIDENCE—SUFFI-
CIENCY.

Evidence *held* to show that the agent of vendor, under a contract to
convey, did not exceed his authority in accepting a payment after the
purchaser's default.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–
429; Dec. Dig. § 123.*]

9. PRINCIPAL AND AGENT (§ 171*)—AGENT'S ACTS—RATIFICATION.

If an agent of the vendor under a contract to convey exceeded his au-
thority in accepting a payment after the purchaser's default, the act was
ratified by the vendor's retention of the payment.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 644–
655; Dec. Dig. § 171.*]

10. SPECIFIC PERFORMANCE (§ 97*)—RIGHT TO RELIEF.

One who demanded a deed under a contract to convey tendering the re-
quired payment after waiver by the vendor of default in earlier payments
was entitled to specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§
286–298; Dec. Dig. § 97.*

Persons entitled to enforce specific performance, see note to Lawyer v.
Post, 47 C. C. A. 493.]

11. SPECIFIC PERFORMANCE (§ 16*)—REQUISITES—EQUITY.

One seeking specific performance must show, not only a legal right
thereto, but also that it will be just.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 35,
36; Dec. Dig. § 16.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by Z. F. Moody against the Eastern Oregon Land Company. Decree for complainant.

Martin L. Pipes, for complainant.

Williams, Wood & Linthicum and Huntington & Wilson, for defendant.

WOLVERTON, District Judge. This is a suit upon the part of the purchaser, under an executory contract, to compel the specific performance thereof by a conveyance by the vendor of the real property involved.. The contract was entered into January 2, 1902, by the terms of which the defendant covenants and agrees, upon the payment of certain money consideration by the complainant, to convey to complainant, by warranty deed, certain lands situated in Wasco and Sherman counties, Or., particularly described, consisting of 2,547.25 acres. The complainant, on the other hand, promises and. agrees to pay for said lands the full sum of $8,457.75, in installments, as follows: $1,457.75 upon the execution of the contract, and $1,750 annually thereafter, on the 1st day of January, 1903, 1904, 1905, and 1906, with interest at the rate of 8 per cent. per annum, payable semiannually; and, further, that he will pay all taxes assessed against the property. The parties further mutually stipulate as follows:

"In case the party of the first part shall make default in the payment of any one or more of the sums of money herein agreed to be paid, for a period of six months, the said party of the first part agrees to surrender the possession of the premises herein described to the party of the second part, which is hereby empowered to take possession of the same and terminate this contract.

"The payment of said sums and interest, and the strict performance by the party of the first part of all the covenants and agreements herein contained, to be by said party of the first part kept and performed, are hereby made a condition precedent to the said conveyance, and time is of the essence of this contract."

The bill of complaint, besides setting out this contract, shows a tender of the balance of the consideration due, and some matter designed to establish waiver by the defendant of prompt payment on the part of the complainant. Complainant further avers that he has done and performed all things required by him to be done or performed under such agreement, and brings the money due into court to be paid defendant on the rendition of the decree.

By answer, the defense of failure to perform on the part of the complainant, in that he failed and refused to make the stipulated payments of the purchase price as required, is interposed; and by cross-bill defendant seeks a rescission and cancellation of the contract, and to this end brings the consideration previously paid into court, and tenders it to the complainant, to be paid to him upon the entry of decree as prayed.

There is but little disagreement in the testimony. Payments on the contract were made and received as follows: On February 13, 1902, $1.457.75 principal; January 24, 1903, $560 interest to January 2, 1903, and $14.20 interest on deferred interest payment; June 2, 1903, $280 interest to July 2, 1903; December 31, 1903, $280 interest to

January 2, 1904; December 29, 1905, $1,120 interest to January 2, 1906, and $67 interest on deferred interest payment; August 13, 1906, $280 interest to July 2, 1906.

It will be noted that the first payment of principal was not made until 42 days after the contract was signed; that installment being payable in cash. The first payment of interest was for one year, and was not paid semiannually as required, nor until 22 days after the second interest payment and the first installment of principal became due. The second payment of interest was made a month before it was payable; the third two days before due; and the fourth payment was not made until almost two years' interest had accumulated, and the first, second, and third installments of the principal had fallen due, being made December 29, 1905. The payment, however, was of interest to January 2, 1906, when the last installment of the principal became due and payable. The last payment of interest was made 1 month and 11 days after the semiannual interest payment was due, and 7 months and 11 days after all the principal payments had fallen due.

Malcolm A. Moody, the son of complainant, was his authorized agent for the transaction of all business with the defendant corporation in connection with the contract, and George T. Parr was the agent for the defendant. The scope of the latter's authority was not general; but he was authorized to make demand for and collect all payments becoming due upon the contract, and the general negotiations touching the contract, after its execution, were had between these representatives. Much correspondence passed between them relative to payments of principal and interest, some of which may be referred to briefly to show the manner of dealing between the parties. On December 14, 1903, Parr wrote to Moody:

"On January 2nd, 1904, the second and third payments on your contract dated Jan. 2nd, 1902, will fall due. * * * The company has requested us to collect all amounts maturing. * * * By making an effort to comply with this request you will greatly oblige."

To this Moody replied December 18th:

"My father is at present in California. * * * I understand from him that his arrangements with you anticipated that the company would carry along the principal until he could conveniently retire it if the interest was kept paid promptly on its due day. I wish you would let me know whether or not this was your understanding."

On December 21st Parr again wrote:

"Replying to your favor of the 18th inst. * * * beg to state that while there was no definite promise given your father regarding the payments we stated that we would endeavor to carry the account without payment as long as possible. The company having now called upon us for payment, we have no alternative in the premises. We will say this, however, that if you will send us half of the amount due and interest, we will see that it is satisfactory with the company to allow the other payment to continue for one year."

On December 31st Moody paid $280 by check, saying:

"I expect father up from Salem right after New Year's, and then we will adjust the principal payments with you."

On January 1, 1904, Parr acknowledged receipt of payment, and wrote:

"We note that you will adjust the principal payments in a short time."

On January 28th Moody wrote:

"It isn't entirely convenient for us to make it just now, but I think we can arrange it soon."

On June 17th Parr wrote Moody:

"Please send us your check for $280.75 to pay interest in full to June 2nd, 1904."

On July 5, 1904, Parr again wrote:

"Interest on your contract dated Jan. 2, 1902, fell due the second instant. Amount payable $280."

And on August 25th:

"The company wrote us a letter a few days since requesting to be advised regarding the arrangements made with you for extension of time on payments due on contract for the purchase of land. We replied that we had extended the time until it would be more convenient for yourself to meet the obligations. In replying to this letter the company sanctioned our actions in the matter, but stated that they preferred to have the interest paid semiannually as provided for in the agreement. We would therefore thank you to comply with this part of the contract, and we will carry the payments along until such times as the company demands that collections be made."

And again on December 6, 1904:

"On the 2nd of January, 1905, there will be due on your contract of Jan. 2nd, 1902, $5,250.00, accrued interest $571.20, making total amount payable at that time $5,821.20. Of this amount we expect a payment of $1,750.00 and accrued interest $571.20; total $2321.20."

Then on August 11, 1906, Huntington & Wilson, attorneys representing the defendant corporation, made demand upon Moody concerning the contract, as follows:

"We are directed and authorized by the Eastern Oregon Land Company * * * to demand of you the surrender of possession of all the premises described in said contract; you are hereby notified that said Eastern Oregon Land Company terminates this contract by reason of your failure to make the payments which by said contract you agreed to make. You are now in default in the payments, which you by said contract agreed to make, in the sum of seven thousand dollars and interest at the rate of eight per cent. per annum from Jan'y 2nd, 1902, and interest upon each semiannual payment of interest at the legal rate from the date such semiannual interest payment became due. We hereby notify you that unless you surrender possession of all of said premises on or before the 21st of August, 1906, or pay the entire amount now due upon said contract on or before said last named date, we shall commence suit to foreclose your interest in and to said contract and said premises. The Eastern Oregon Land Company is now ready and willing and hereby offers to convey to you by warranty deed all of said tracts of land described in said conveyance upon the payment of the amount due from you upon said contract."

In this demand a mistake was made as to the time to which interest was paid. This was corrected by subsequent letter of date August 17th. On August 13, 1906, Moody transmitted to Parr by exchange $280, saying:

"We hope by the time the next payment of interest is due to retire a part if not all the principal."

On August 21st Moody again wrote to Parr:

"Confirming our conversation by telephone to-day, we will be ready to pay the balance due on the contract with your company made January 2nd, 1902, as soon as you can execute and deliver the deeds for the land according to the terms of the contract. Please make the deeds to E. E. Ferguson and notify me by return mail whether you prefer to receive the money and deliver the deeds here at The Dalles or at Moro."

Later, on September 11th, Moody made further inquiry touching the execution of the deeds as requested. On September 17th Parr wrote relative to the deed:

"Will say that we have heard nothing from the city relative to same since writing."

On October 8th Moody again wrote inquiring about the deed, saying:

"Please hurry its execution."

In reply to this, Herbert S. Ward, representing the land company, wrote October 9th:

"Mr. Parr is at the present time accompanying the Messrs. Martin on a trip across the grant. Upon his return, however, he will be pleased to give your letter consideration."

On October 17th Moody again wrote Parr:

"Your secretary reported a few days ago that on your return to Moro, the execution of our deed would have your immediate attention. Please attend to it promptly."

On October 22d Moody wrote to Huntington & Wilson making a tender in writing of the balance due upon the contract, and demanding a deed of conveyance. By letter of the same date Huntington & Wilson acknowledged the tender, and admitted that the demand for deed had been made under the contract, saying further:

"We are not in a position to deliver such deed."

On the 23d of October Moody made upon Parr a like demand as made upon Huntington & Wilson for a deed to the lands.

On August 17th, after receiving the letter from Huntington & Wilson, Moody relates that he saw Parr and expressed surprise that the company desired to rescind the contract, to which Parr replied, in effect, that he was unable to explain it, as he himself was surprised, and further said that he was satisfied that the company would be willing to accept a portion of the balance of the principal. To this Moody answered that, since the matter had been placed in the hands of attorneys, he was afraid to make partial payments, and thought that it would be better to pay it all, and that he would let Parr know on the following day whether he would pay a portion only or all the principal then due. Moody saw Parr on the next day and told him that he (Moody) had concluded to pay the whole amount, and Parr answered that would be satisfactory, and that he would send for the deed. Later, on August 21st, Moody called Parr up on the telephone, and told him how he wanted the deed made, namely, to E. E.

Ferguson, and asked him to notify the attorney, which he consented to do, and said he would forward the deed for execution. Other conversations were had from time to time, during the running of the contract, touching the payments of both principal and interest, and the matter was allowed to run along, seemingly to the satisfaction of both parties. Prior to the day of the tender to Huntington & Wilson, Moody arranged with Ferguson for obtaining $7,000, with which to make the requisite payment upon the contract to entitle him to a deed.

Mr. Parr testifies, beyond what Mr. Moody has disclosed, that in December, 1903, he had a conversation with Moody wherein he suggested that Moody write a letter to the company at San Francisco, requesting an extension of time for payment of the principal then due and to become due up to January 2, 1904, which was done, and that the matter was accordingly submitted to the directors of the company; that in pursuance thereof an extension was granted, with the understanding that the interest should be kept up promptly, which action was communicated to Moody; that when the payment of $1,187 was made on December 29, 1905, he (Parr) insisted that Moody pay the entire sum then due, both principal and interest; that after considerable conversation he agreed to accept the interest in full to January 2, 1906; and that Moody stated that he would pay the principal within a few months. At this time Moody was shown a letter from the company, whereby Parr was instructed, if necessary, to recover possession of the land involved by the contract and damages on account of loss sustained by withholding it; and, if Moody refused to pay in full, that the matter be then referred to Messrs. Huntington & Wilson, with instructions to begin proceedings to collect the amount. This communication was accompanied with a specific statement of the full amount due to January 1, 1906, both principal and interest. On January 1, 1906, Parr wrote the company that Moody had paid $1,187 in full of the amount of interest due January 2, 1906, and reported as follows:

"We promised him to present the matter and if satisfactory to the company would allow the account to continue until he could make some arrangement."

On January 9, 1906, the company, through Walter S. Martin, president, wrote Parr acknowledging receipt of the payment, and said:

"I must ask you to immediately take this matter up and get a settlement from Gov. Moody of the principal."

After receiving this letter, Parr had other negotiations with Moody with reference to a settlement, saying to him:

"If you can pay or send us $1,000.00 it is possible that I can get the company to accept that and continue the other for a longer period."

To which Moody replied that he would make the payment by sending a check for that amount. Moody did not send the check as promised. On January 16, 1906, Parr wrote the company that Moody promised to give the matter of payment of the principal "his early consideration and endeavor to negotiate a loan at a lower rate of interest."

On March 22d the company again wrote Parr, as follows:

"As before stated, we do not think the conditions warrant us in giving the Governor any more time, as we feel that we have been very lenient with him, and as the principal as well as the interest is now long in arrears, we desire to have this matter immediately taken up and a settlement made."

Parr further testifies that, after receiving this letter, he suggested again to Moody that he do something, and if he could not pay $1,000 to pay $500, which Moody promised to do in a few days, but failed to do; and that neither at the time of the payment in December, 1905, nor at any other time, did he agree with Moody that the time of payment of the overdue installments of principal should be extended. Parr received the payment of $280 of August 13, 1906, and forwarded it to the company at San Francisco, which sum it has since retained. Parr further testifies that, during the time the interest was not paid, he does not remember making any demand upon Moody for the principal, but that after December, 1905, he informed Moody on several occasions that the company was insisting upon the payment of the principal, and urged him to at least make partial payments to show his good intentions. Parr forwarded the deed to San Francisco for execution, as requested by Moody, naming E. E. Ferguson as grantee; but the company did nothing about it. On August 20, 1906, the company telegraphed Parr:

"Consult Huntington & Wilson before accepting principal or interest from Moody."

Coming now to the legal phases of the controversy, it must be premised that, the complainant seeking a specific performance of the contract, it is essential that he show a substantial compliance upon his part with all his covenants and agreements, or, if there be any that he has not complied with, that such performance has been waived by the land company. There can be no controversy as to this.

Contention is made that the complainant has not shown that he has paid all the taxes levied against the land as they became due, under his agreement, and therefore the suit must fail. This may be disposed of at the outset. The answer is that no issue is made concerning this in the pleadings. True, complainant, by a blanket allegation, avers that he has performed all the terms of the contract on his part agreed to be performed—a clause usual to all complaints in suits of the kind. But the specific issues are made by the answer and the cross-bill, and in these papers no complaint is made whatever that complainant has not paid the taxes as stipulated on his part. Consequently no evidence was offered at the trial to prove or disprove the fact, whatever it was, and none was necessary in the absence of an issue thus tendered. The objection is therefore without merit.

The defenses regularly interposed are: First, that the complainant has not made his payments promptly, as required by the terms of the contract of purchase; and, second, which is affirmative in its nature, that defendant is entitled to a rescission and cancellation.

It is strongly urged that complainant has, by his failure to pay on time, forfeited all prior payments made, both of principal and interest, and that by reason thereof the defendant is entitled to re-enter

upon the lands, and thus to close the contractual .relations between the parties. This depends upon the proper construction .of the contract. The agreement of the ·purchaser is·that, in case he should .make default in payment of any one or· more of the sums of money agreed to be paid as consideration for said land; for a period of six months, he will then surrender possession of ·the premises to the vendor, and in consonance therewith he empowered the vendor to resume possession, and thereby to terminate the contract. By ·a .subsequent clause, time is made of the essence of the contract, and strict. performance a condition precedent to conveyance .under the vendor's covenant. There is no forfeiture stipulated for, or agreed to, and a fortiori none can take place ipso facto on failure .in payment at the exact time when due and the lapse of six months .thereafter. The agreement· on the part of the purchaser in such event.. is to surrender possession. This agreement is for the benefit of the vendor, and it was optional with it alone whether to insist upon it or not. . The vendor, being empowered to re-enter into possession, could thereby terminate the contract. It would not be terminated by the simple default of the purchaser, although he agreed in such case to surrender; but it .remains for the vendor to signify its purpose to insist upon the surrender. If insisted upon, and the re-entry made, the contract would be terminated. What would be the right of the purchaser to recover back the purchase money paid if. the contract was terminated in that way, I need not now decide. The termination of the contract being optional with the vendor, it was incumbent upon it to signify its election to that purpose in some way, and of this it should have seasonably advised the purchaser. Thereupon it would have had the right of· action to recover possession, and not until then. ˙ O'Connor v. Hughes, 35 Minn. 446, 29 N. W. 152. There is here, therefore, neither forfeiture of previous payments, nor a termination of the contract under the terms thereof. In this respect the present is unlike the case of Maffet v. Or. & Cal. R. Co., 46 Or. 443, 80 Pac. 489.

There were open to· the defendant, if the complainant was in default in payment, three remedies: One, to declare its election to repossess itself of the premises in an appropriate way, and then to bring its action in ejectment.· O'Connor v: Hughes, supra; Reddish v. Smith, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. Rep. 781. Another, to sue for a foreclosure of the contract, ·and thus to recover the balance remaining of the purchase price by sale of the land and application of the proceeds to· the payment thereof. Burkhart v: Howard, 14 Or. 39, 12 ´Pac. 79. And, still another, for cancellation and rescission. The defendant has chosen to adopt the latter remedy.

Much controversy has arisen relative to the particular purpose of the demand made upon the complainant by Messrs. Huntington & Wilson August 11, 1906, whether it was made with a view to obtaining possession of the land for default in payment of consideration, or to putting the company in a position to rescind. The notification is that, unless possession be surrendered on or before August 21, ˙1906, or ´the entire amount due be paid, suit to foreclose the purchaser's interest in and to the contract and premises will be instituted.

In the same connection, an offer to convey was made. It cannot be, from the wording of this demand, that a forfeiture of the consideration paid and a repossession of the land by the land company was intended. True, surrender of possession is demanded; but the remedy specified excludes an action therefor. The thing that is intended is usually interpreted by what is done. In this case, what has been done is in exact accord with the idea of a rescission, and this is what is asked for in the cross-bill, which is tantamount to a suit instituted for that purpose.

As an essential to the remedy, it is recognized by the pleader that the purchase money paid should be returned to the vendee so as to reinstate statu quo conditions. This is deducible from the fact that it is so tendered in the cross-bill. Thus we are brought to the question whether the defendant, upon the cross-bill, is entitled to a rescission. This may be considered in connection with the question presented upon the bill of complaint whether the complainant is entitled to a specific performance, for, if complainant is not entitled to such relief, the defendant ought to have a rescission.

That Moody did not make the stipulated payments at the times designated is a fact conceded, and the crucial question is resolved into whether the land company has, by its conduct, waived strict performance in this respect. A waiver may be accomplished by express agreement, or it may result through implication arising from the acts and dealings of the party against whom it is claimed, if they have been acted upon by the party with whom he is in contractual relations. Without question, the acceptance of the cash payment after default of the vendee in paying on the day and date of the contract was a waiver of that default. So the acceptance of any interest payment after the day it became due and payable would likewise be a waiver of default as to every such interest payment so accepted. There can be no cavil as to that. Furthermore, the acceptance of an interest payment upon a defaulted payment of principal would be a waiver of such default, because tantamount to the acceptance of a consideration for a continuance of such payment after due. This proposition seems equally clear with the preceding. The land company is certainly estopped, by taking interest on an overdue payment, from claiming that Moody was in default upon the principal during the time for which it has received interest from him while so overdue. If the company did not desire to waive such a default, it ought to have refrained from taking interest upon any overdue payment of the principal.

Thus it will appear, under the testimony, that the land company waived strict performance as to all payments of principal except the last, because the interest on all prior overdue payments was paid in full to January 2, 1906, by the payment of $1,187, made December 29, 1905, which included also interest on overdue interest payments. There was, therefore, by the acceptance of that particular interest payment, a waiver on the part of the land company of all prior defaults in payment on the part of Moody, whether of principal or interest. The purchaser was, from that date, allowed to continue with-

out payment of any part of the principal, although he continually promised to pay some part of it, until August 11, 1906, when the demand for possession was made in default of payment of the whole amount due within 10 days. There was due then $7,000 of principal and the accrued interest from January 2, 1906. On the second day following the posting of the letter containing the demand, M. A. Moody made a payment to Parr of $280, being the interest for six months on the amount of the principal then due. This was accepted by Parr, and forwarded to the company at San Francisco. The letter to complainant was probably received by him prior to the date when M. A. Moody, his son, made the payment of $280; but the latter had no knowledge of it at the time. This circumstance relieves Moody of the charge of any endeavor to circumvent the effect of the demand. Now, an acceptance of the $280 interest on these overdue payments was a waiver of the default for which demand for possession was made, because it was an acceptance of a consideration for the use of the money represented by such payments in the meantime, and, being a waiver for this purpose, it rendered nugatory the effect of the demand. The default being waived, another demand would be necessary, with a reasonable time fixed within which to make final payment, before there could be a final determination of the contract.

But it is urged that Parr exceeded his authority in accepting the $280 payment, and therefore that the land company was not bound by his act in this respect. This proposition is manifestly not sustainable. Parr's explicit authority was to collect both interest and principal, and to forward the same to the company at San Francisco. He acted in that capacity with reference to this contract, collecting interest and forwarding it to his principal, which was always received without question, although collected upon principal payments overdue; and thus by the acts of the company his acts were ratified, even if beyond the scope of his authority. Moody was all along cognizant of these dealings, and was warranted in supposing that Parr had full authority for that purpose. Parr was therefore held out to be something more than a mere agent to make collections. His authority extended even to the binding of his principal to a waiver of a default in payment, where he accepted interest on overdue payments or parts of such payments. The land company recognized this, for it telegraphed Parr on August 20th not to receive any more payments, either of principal or interest, from Moody. The purpose of such telegram was to revoke all previous authority in Parr, as it respected collections, so that the company would not be further bound by his acts. The payment of August 13th had, however, been previously made to Parr. This payment was received by the land company on August 24th, and, although so received, the company retained it, making no effort to return it or to notify Moody that it was held to his credit. By these acts, even if Parr was without any authority in the first instance, the company ratified and affirmed what he did in the premises, and is accordingly bound thereby. I hold, therefore, that by accepting this payment the land company waived all prior default of Moody in strict performance in payment of the purchase price,

and Moody was free to make full payment of what remained due on the contract so as to entitle him to a deed.

Payment by the terms of the contract is made a condition precedent to the delivery of the deed. This required Moody to make the payment before he could demand a deed at the hands of the land company. The tender of payment was duly made to the land company, through Huntington & Wilson, its attorneys, who answered that they were not in a position to deliver the deed. By such tender Moody became entitled to the deed conveying the premises, and hence is entitled to a decree for specific performance. It follows as a corollary that defendant is not entitled to a rescission of the contract. In so concluding, the court is clearly within the equity rule that a party demanding specific performance must show, not only a legal right to the relief sought, but also that such decree would be just and meet with equity. The complainant's legal right arises, not upon the fact that he made his payments strictly as stipulated, but that the defendant, by its conduct, waived his default in that particular, which put complainant in a position, after tender of the balance due of the purchase price, to demand his deed.

The equities are with the complainant. The defendant has received its interest upon all deferred payments, and the entire balance due was tendered, so that it is losing nothing by its bargain. It is only just that the complainant should get the land.

Let a decree be entered for complainant as prayed.