## W. T. TRAINER AND ANOTHER v. B. F. LAMMERS AND OTHERS.[1]

January 2, 1925.

Nos. 24,183, 24,184.

**When vendor is not entitled to additional time to perfect his title.**

1. Where the time to perform an executory contract for the sale and conveyance of land is fixed and definite, the vendor is not entitled to additional time in which to perfect his title, but may discharge encumbrances out of the purchase money then to be paid.

**When vendor is entitled to such additional time.**

2. Where the time for performance is uncertain and indefinite, he is entitled to a reasonable opportunity to perform after the time becomes fixed and definite.

**Vendees attempt to rescind was ineffectual.**

3. The contract provided that the vendees were to pay the deferred portion of the purchase price on or before a given date and that the vendors were to convey free from encumbrance. The vendees, knowing there was a mortgage on the land, tendered payment before the given date without prior notice and demanded their deed, and on the same day brought an action for rescission on the ground that the vendors were in default because unable to convey free from encumbrance at the time of the tender. *Held*: that their attempt to rescind was ineffectual, as the vendors were entitled to a reasonable time after the tender in which to perform.

[1]Reported in 201 N. W. 540.

Two actions in the district court for Renville county which were tried before Qvale, J., who in the action for an injunction ordered judgment in favor of plaintiff annulling the judgment entered in favor of defendants and against plaintiff and John P. Butler on January 29, 1923, for $933.94, and vacating the execution and levy thereunder, and in the action for rescission of executory contract for sale of land ordered judgment in favor of plaintiff for rescission of contract and the recovery of $3,200 paid on the contract. From an order in each case denying their motion for a new trial, defendants appealed. Reversed.

*Rieke & Hamrum,* for appellants.

*Murray & Baker* and *Daly & Barnard,* for respondents.

TAYLOR, C.

On March 8, 1920, plaintiffs entered into an executory contract for the purchase from defendants of a farm of 120 acres in Renville county for the sum of $16,200. They paid $3,200 in cash and agreed to pay $10,000 on or before 5 years from date of the contract with interest at 6 per cent payable annually, and to pay the remaining $3,000 on or before 5 years from date of the contract with interest at 7 per cent payable annually. They also agreed to pay all taxes levied against the land thereafter. They took possession of the farm at once under the contract and occupied and cropped it thereunder in the years 1920 and 1921. After the litigation arose they made an arrangement with defendants under which they still remain in possession.

The contract contained a provision giving defendants an option to place mortgages on the land, on or before December 1, 1920, covering the deferred payments, in which event the farm was to be conveyed to plaintiffs at that time and plaintiffs were to assume the mortgages. Defendants did not exercise this option. On January 17, 1921, defendants mortgaged the farm to the Prudential Life Insurance Company for the sum of $5,000 payable in 5 years. In June, 1921, plaintiffs, claiming that defendants had breached the contract by failing to place mortgages covering the deferred pay-

ments and by mortgaging the land to the insurance company for a period extending beyond the time for performing the contract, brought an action for money had and received to recover back the $3,200 which they had paid. In their answer, defendants interposed a counterclaim for $810 interest on the contract which had then accrued and remained unpaid. The cause came on for trial, and, after the trial had proceeded for a day or more, plaintiffs made a motion to dismiss the action. Defendants objected to the dismissal and insisted that they were entitled to proceed to judgment on their counterclaim. The court granted plaintiff's motion and dismissed the action.

Defendants appealed. This court held that the dismissal was error so far as it related to the counterclaim. Trainer v. Lammers, 152 Minn. 415, 188 N. W. 1013. It was further held, in substance, that the provision in the contract allowing defendants to place mortgages on the land covering the deferred payments merely gave them an option to do so if they wished, and that this provision was no longer of any force or effect as they had failed to exercise the option within the specified time; also that giving the mortgage to the insurance company was not a breach of the contract, for it would be sufficient if defendants had good title when the time to convey came, and that the time to convey would not come until plaintiffs had performed or tendered performance or until the time fixed for final performance had arrived. The cause was remanded and resulted in a judgment, rendered January 29, 1923, in favor of defendants for the interest which became due in March, 1921. On February 1, 1923, an execution was issued on this judgment to W. S. Carver, the sheriff of Martin county, who levied upon certain personal property of plaintiff Trainer thereunder.

Plaintiffs having failed to pay any interest on the deferred payments or any of the taxes against the land, defendants, on January 31, 1923, gave the statutory notice that the contract would be canceled, unless on or before March 7, 1923, plaintiffs paid the interest which became due in March, 1922, and the taxes which were in arrears.

Plaintiff Trainer resided at Truman in Martin county; plaintiffs' attorneys, Messrs. Murray & Baker, resided at Bird Island in Renville county. A. V. Rieke, defendants' attorney, resided in the city of Minneapolis. About February 3, 1923, Trainer went to Bird Island. A warranty deed of the farm covenanting that it was free from all incumbrances was drawn up ready for execution by defendants. A quitclaim deed from plaintiffs to defendants was also prepared. An itemized statement, showing that the sum of $15,726.17 was the balance due on the purchase price, was made out. On the morning of February 5, 1923, Trainer procured $15,726.17 from a bank at Bird Island giving his demand note therefor. In the forenoon of that day, he and James B. Baker, one of his attorneys, accompanied by the cashier of the bank, drove from Bird Island to Fairfax where defendant Lammers resided. Trainer and his attorney went to a hardware store where Lammers was at work, and Trainer produced the money, the warranty deed, and the statement of the amount due, and tendered the money and demanded the execution of the deed. Lammers replied that Trainer knew the mortgage was on the land, that he could not execute the deed, and asked Trainer to take up the matter with his attorney, A. V. Rieke, who was handling it for defendants and had all the papers. Trainer said he wanted his deed or wanted the money back which he had paid. Lammers replied that he would have to see his attorney and could do nothing. Trainer then offered the quitclaim deed, but Lammers refused to receive it. Lammers asked for and was given the statement showing the amount due. To this plaintiffs had appended a statement to the effect that they had tendered the amount specified and had demanded a warranty deed free and clear of all encumbrance on February 5, 1923. Trainer, his attorney and the banker immediately returned to Bird Island, where Trainer returned the money to the bank and received back his note.

On the same day, February 5, 1923, the papers were prepared in two actions—one against the vendors in the contract and the sheriff of Martin county to enjoin further proceedings under the judgment rendered in the former action; the other against the vendors in the contract to rescind it and recover the $3,200 paid therein. In the

action for an injunction, the summons and a restraining order, both dated February 5, were served on the sheriff on February 8 and on Lammers on February 10, 1923. Although the complaint in the action for rescission was attached to and made a part of the complaint in the action for the injunction, the summons in the action for rescission was not served until February 27, 1923.

On the same day on which Trainer made his demand, Lammers wrote Rieke, his attorney, inclosing the statement which had been given him at the time of the demand. Rieke received the letter the next morning, February 6, 1923, and immediately called plaintiffs' attorney, Baker, on the telephone and told him they were ready to accept the offer and would proceed to give the deed at once. He states that Baker replied that they did not have the money then, that they had a hard time raising it and had to pay it back. He states that thereupon he told Baker that if it was difficult to raise the money, if plaintiffs would assume the mortgage, defendants would give them a discount of the amount which defendants would have to pay for the privilege of paying the mortgage at that time, and that Baker replied that he would take up the matter with Trainer, which would take 3 or 4 days as Trainer was away, and would then let Rieke know. Rieke then went to the Towle-Jamison Investment Company, which was the agent and representative of the insurance company, and ascertained that $132.50 was the amount which defendants would be required to pay for the privilege of discharging the mortgage at that time. Immediately after lunch Rieke again called Baker on the telephone and told him that he had ascertained that defendants would have to pay $132.50 as a bonus to obtain satisfaction of the mortgage and that they would give plaintiffs a discount of that amount if plaintiffs assumed the mortgage. He also told Baker that defendants stood ready to do either—give a a deed under which plaintiffs assumed the mortgage, or give a deed free and clear of encumbrances. He states that Baker replied that he would communicate with Trainer and let him know in 3 or 4 days.

On the same date, February 6, 1923, Rieke wrote a letter to plaintiffs' attorneys in which, after referring to the telephone conversations, he stated:

"If you want a deed according to the contract, we are ready to furnish it free and clear according to the contract. If, on the other hand, you prefer to assume a $5,000 mortgage, we will discount the amount due from you to us in the sum of $132.50. In other words, that is exactly the amount we shall have to pay and will pay to satisfy the mortgage at this time. All this matter I have given you in my conversation over the phone and your Mr. Baker said that he will take the matter up at once with Mr. Trainer so that he may know and we may know which one of these propositions your Mr. Trainer desires us to comply with. We stand ready to comply with either one forthwith."

Baker testified that the statements made by Rieke over the telephone were substantially as stated by Rieke, but that he, Baker, did not say much of anything except that Trainer had had considerable difficulty in raising the money, and that the matter must be taken up with Trainer as he had no authority to pass upon it. He did not mention the fact that they were bringing suit.

Hearing nothing from plaintiffs, defendants on February 10, 1923, paid the mortgage to the Towle-Jamison Investment Company as the agents of the insurance company, and obtained a receipt signed by them acknowledging that it had been paid in full. On the same date they executed a warranty deed to plaintiffs in which they covenanted that the land was free from all encumbrances. On February 13, 1923, this deed together with the receipt was tendered to and refused by plaintiffs, and plaintiffs were then informed that the deed and receipt would be left at the Citizens State Bank in Fairfax for acceptance at any time. On March 13, 1923, a formal satisfaction of the mortgage was executed by the insurance company in the state of New Jersey, and together with the note, mortgage and abstract was sent to the Towle-Jamison Investment Company who delivered them to Rieke. The satisfaction was recorded on March 20, 1923. On the next day the abstract was brought down to date showing the recording of the satisfaction, and on the same date the deed, together with the satisfaction and abstract, was again tendered to and refused by plaintiffs.

In their complaint in the action for rescission plaintiffs set forth the contract; the tender and demand for a deed on February 5, 1923; the existence of the mortgage and that by reason thereof, defendants were "unable to accept the tender or deliver the deed;" and asked that the contract be rescinded and that they recover the sum of $3,200 with interest. Plaintiffs have never offered to "do equity" to the extent of expressing a willingness to be charged with the rental value of the farm for the two years use of which they have had the benefit. To that extent they have failed to do what they ought to have done in order to put defendants in statu quo. Defendants, in their answer, alleged that they had accepted plaintiffs' tender and had tendered a deed and that the deed was in the bank ready for delivery on compliance with the terms of the contract by plaintiffs. At the close of the trial defendants again offered to convey.

The two cases were tried together and the court made findings and directed judgment for plaintiffs in both. Defendants made motions for a new trial in both and appealed from orders denying these motions.

The deferred payments were payable on or before 5 years from the date of the contract. The trial court seems to have been of opinion that defendants were required to be ready to convey whenever full payment was tendered, and that plaintiffs had the right to rescind the contract, if defendants were unable to convey an unencumbered title at the time of such tender, although they had no previous notice or knowledge that it was to be made. The court said:

"It was the duty of defendants to convey a good unincumbered title as they had agreed to do at any instant of time that they might be called upon to deliver such title by plaintiffs performing on their part."

Where the time for performance is fixed and definite, the vendor is not entitled to additional time in which to perfect his title, yet even in that case he is entitled to a reasonable time after demand in which to execute the deed. While he must have good title at the

specified time, yet, if there be encumbrances which can be satisfied out of the payment then to be made, he is not required to discharge them in advance, but may pay them at the closing of the contract and out of the purchase money then paid. Of course he must be ready to cause them to be discharged at that time. Williams v. Gilbert, 120 Minn. 299, 139 N. W. 502; True v. N. P. Ry. Co. 126 Minn. 72, 147 N. W. 948; Johnson v. Herbst, 140 Minn. 147, 167 N. W. 356; Brown v. California and W. L. Co. 145 Minn. 432, 177 N. W. 774; Lynch v. Higgins, 154 Minn. 151, 191 N. W. 422; Lutz v. Fults, 155 Minn. 207, 193 N. W. 119; McChesney v. Oppek, 156 Minn. 260, 194 N. W. 882; Seerup v. Goraczkowski, 159 Minn. 364, 199 N. W. 94; Trainer v. Lammers, 152 Minn. 415, 188 N. W. 1013; Paynesville Land Co. v. Grabow, 160 Minn. 414, 200 N. W. 481.

But where the time of performance is uncertain and indefinite neither party is required to keep himself in constant readiness to perform. Each is entitled to a reasonable opportunity to perform after the time for performance becomes fixed and definite. If one party has the right to fix the time for performance, the other is entitled to a reasonable time after notice of the time so fixed. O'Connor v. Hughes, 35 Minn. 446, 29 N. W. 152; McNamara v. Pengilly, 58 Minn. 353, 59 N. W. 1055; Tingue v. Patch, 93 Minn. 437, 101 N. W. 792; also annotation in 4 A. L. R. 815, 822.

The most common cases in which this principle is applied are those in which the contract specifies the time of performance, but the right to insist upon performance at the time specified has been waived. After waiving this right one party cannot terminate the contract for the failure of the other party to perform until he has demanded performance and given the other party a reasonable time and opportunity to comply with the demand. Quinn v. Olson, 34 Minn. 422, 26 N. W. 230; O'Connor v. Hughes, 35 Minn. 446, 29 N. W. 152; Cummings v. Rogers, 36 Minn. 317, 30 N. W. 892; McNamara v. Pengilly, 58 Minn. 353, 59 N. W. 1055; Mo v. Bettner, 68 Minn. 179, 70 N. W. 1076; Tingue v. Patch, 93 Minn. 437, 101 N. W. 792; Lynch v. Higgins, 154 Minn. 151, 191 N. W. 422; Schmidt v. Scandinavian C. L. Co. 136 Minn. 14, 161 N. W. 218.

In the present case the contract fixed March 8, 1925, as the time for performance, unless plaintiffs elected to pay in full at an earlier date. They were given that privilege. But, if they elected to pay before that date, defendants were entitled to a reasonable time after notice of such election in which to remove the encumbrance and make conveyance. Plaintiffs admit that they gave no intimation in advance of their intention to make a tender. They made the tender and demanded execution of the deed forthwith. They gave Lammers, to whom they made the tender, no time or opportunity to confer with his attorney or the other vendor, or to take any action toward removing the encumbrance. It is apparent that they were not looking for performance, but were seeking to put themselves in position to rescind. The case in this respect is quite similar to that of Lynch v. Higgins, supra, and the observations there made are appropriate here. The tender and demand were ineffectual, and gave plaintiffs no right to rescind the contract. It could not be terminated in such a summary manner.

Defendants proceeded promptly to accept the offer and remove the encumbrance. They paid the required amount to the Towle-Jamison Investment Company. At the trial there was a controversy as to the authority of that company to accept payment, a question no longer material, as the insurance company itself executed a formal satisfaction of the mortgage, thereby recognizing and accepting the payment. This satisfaction was executed in a distant state. That its execution and return was somewhat delayed is not important under the facts shown by this record, for plaintiffs had not put themselves in position to rescind.

Shortly before plaintiffs made their tender, defendants had served the statutory notice to cancel the contract, unless plaintiffs paid the interest and taxes then past due. Defendants, by their subsequent conduct, waived the right to terminate the contract under this notice and concede that they have waived it. At the close of the trial they again tendered performance, and, so far as appears, plaintiffs can obtain their deed at any time by making payment.

The action for an injunction is based on the claim that plaintiffs had rescinded the contract for defendant's failure to convey on de-

mand, and that in consequence of such rescission defendants could not enforce the judgment for an unpaid instalment of the purchase price. Plaintiffs having failed to accomplish a rescission, the ground upon which they based their action for an injunction did not exist and the action must fail.

In each case the order denying a new trial is reversed.