Submitted on briefs November 3, 1920, affirmed January 11, rehearing denied March 8, 1921.

## EPPLETT *v.* EMPIRE INV. CO., INC.

(194 Pac. 461, 700.)

**Vendor and Purchaser—Vendor With "Option to Declare Forfeiture" Required to Give Purchaser Reasonable Notice.**

1. Where contract gave vendor the "option to declare a forfeiture" on purchaser's default, the contract did not automatically work a forfeiture upon purchaser's failure to pay an installment, but merely entitled vendor to elect to declare a forfeiture; and hence the vendor was required, before declaring such forfeiture, to give purchaser reasonable notice.

**Vendor and Purchaser—On Vendor's Unauthorized Declaration of Forfeiture and Purchaser's Acceptance Purchaser can Recover Installments Paid.**

2. Where contract requires vendor to give purchaser reasonable notice before declaring a forfeiture, vendor's letter to purchaser, stating that the contract had been forfeited, and that purchaser's rights thereunder determined, written without first giving purchaser a reasonable notice, together with purchaser's letter accepting rescission of the contract, constitutes mutual rescission, and not a declaration of forfeiture on part of vendor, so that the purchaser is entitled to recover purchase-money installments paid.

**Vendor and Purchaser—Notice of Forfeiture not Required After Purchaser's Abandonment.**

3. Where purchaser informed vendor that she would make no more payments, vendor was not required to give purchaser notice in order to effect a forfeiture, since purchaser, by abandonment of contract, waived her right to notice.

**Vendor and Purchaser—Tender of Deed not a Condition Precedent to Declaration of Forfeiture Except for Default in Final Payment.**

4. Vendor is not required to tender a deed before declaration of forfeiture for purchaser's default in payment of intermediate installment, but is required to tender deed where the default is in the final payment, since the obligation to pay the final installment and the obligation to deliver a deed are concurrent obligations.

**Vendor and Purchaser—Tender of Deed as Condition Precedent to Declaration of Forfeiture Unnecessary After Abandonment of Contract by Purchaser.**

5. Purchaser, by notifying vendor of her abandonment of contract, made it unnecessary for vendor to tender deed as a condition precedent to declaration of forfeiture.

**Pleading—Answer Construed Most Favorably to Defendant on Appeal, in Absence of Objection in Lower Court.**

6. Where it does not appear from the record whether plaintiff moved for judgment on the pleadings or demurred to the answer in

---

1. Forfeiture of vendee's rights, see note in 31 Am. Dec. 578.

the lower court, the Supreme Court, after ascertaining whether plaintiff was entitled to judgment on the pleadings, will construe answer most favorably to defendant.

**Pleading—Plaintiff, on Denial of Allegation in ' Answer, cannot Ask Judgment on Pleadings by Reason of It.**

7. Plaintiff, after denying allegation of answer, could not ask for judgment on the pleadings on the strength of such allegation.

### ON PETITION FOR REHEARING.

**Pleading—Vendor's Answer Held not an Admission of a Mutual Rescission—"Accept."**

8. Where the purchaser of land on installments notified the vendor that she could pay no further installments, and thereafter sought to recover from the vendor amounts paid, although the contract provided for forfeiture in case of default, the averment in the amended answer that the vendor accepted the abandonment cannot be treated as an admission that there was a mutual rescission which would entitle the purchaser to recover, for the word "accept" should not be treated as equivalent to "acquiesce," in view of the fact that plaintiff, who alleged an acquiescence in the abandonment, traversed the answer.

**Pleading—Failure to Move Against Inconsistent Defenses. Operates as Waiver.**

9. It is the general rule that a failure to move against inconsistent defenses operates as a waiver.

**Pleading—Seeking Equitable Relief by Answer Held not Admission of Rescission Authorizing Judgment on Pleadings.**

10. Where a purchaser who had defaulted in payment brought an action against the vendor to recover installments paid on the theory that there had been a mutual rescission, and the vendor, after setting up the defense of forfeiture, prayed for equitable relief, such prayer does not warrant the purchaser's recovery of judgment on the pleadings on theory of mutual rescission, the answer not having been attacked on the ground of inconsistent defenses, even though a court of equity might require a waiver of the forfeiture before granting relief and the prayer for equitable relief involved the idea of a subsisting contract.

From Multnomah: JOHN P. KAVANAUGH, Judge.

In Banc.

The plaintiff, Winnie Epplett, is attempting in this action, brought against the Empire Investment Company, Inc., a corporation, to recover installments paid

---

9. Method of objecting to inconsistent defenses, see note in **Ann. Cas.** 1917C, 743.

by her on a land sale contract. The parties consenting, the cause was tried to the court without the aid of a jury. There was a judgment for the defendant, and the plaintiff appealed.

There is no bill of exceptions. There is no transcript of evidence. The appeal is presented upon a record which consists only of the pleadings and findings made by the trial court. The plaintiff contends that she is entitled to a judgment: (1) On the pleadings independently of the findings of fact; and, (2) on the findings of fact considered alone.

On October 2, 1911, the plaintiff and defendant entered into a written contract under the terms of which the defendant agreed to sell and the plaintiff agreed to buy two lots owned by the defendant in Multnomah County. The price was $750, of which $50 was paid at the time of the execution of the contract, and the remainder was to be paid in monthly installments of $10. Upon payment of the full purchase price the defendant was to deliver to the plaintiff a warranty deed and an abstract of title. The plaintiff agreed to pay the taxes, and it was stipulated that the deed, when executed, should be subject to taxes accruing after the date of the contract. The writing contained the following provision:

"And it is understood and agreed that time is of the essence of this contract, and that the party of the first part (the corporation) has the option to declare the amount paid thereon forfeited as reasonable rent for said premises, and this contract canceled, unless the payments hereinbefore mentioned shall be made at the time and place herein provided. And said party of the first part shall forthwith be released from the obligations both in law and equity arising out of this transaction."

In addition to the initial payment of $50, the plaintiff made 24 payments. These 24 additional payments were made in different amounts. There were three $20 payments; one $40 payment; four several payments aggregating $48.40; and sixteen $10 payments. The first payment after the initial one was not made until February 20, 1912, when the plaintiff paid $10; and at all times after that date the plaintiff was in arrears. The last payment was made on October 13, 1916, when the plaintiff paid $12.05. Notwithstanding the repeated defaults in payments, the defendant at all times prior to October 10, 1918, "solicited and encouraged plaintiff to continue her payments under the contract, and to make some arrangement by which she could continue her payments under the contract."

Under date of October 10, 1918, the plaintiff wrote to the defendant saying:

"I wish to inform you that it will not be necessary for you to bring suit for title to the lot I have been trying to pay for, on the installment plan. I shall be very glad to give you a quitclaim deed, or whatever is required to rid myself of this obligation. I think it would be very foolish of me to continue making payments on it, if I were able, as I consider I have already paid in its worth and more.

"I hope you see fit to give me at least a small part of the $350, I have paid into this lot. I hate to lose it all. It may be I am entitled to this in the reading of the contract. However, will you please let me know how best to rid myself of this burden and worry, without the trouble and expense of suit?

"Hoping to hear from you at once, I beg to remain

"Very truly yours,

"WINNIE EPPLETT.

"P. S.—I discontinued making payments for the reason that I could not make them and further I thought this the quickest way to end the matter. I

thought that you had the title to the lot anyway, and if not, you would pay me part of what I have paid in for a release from me, of any equity I had in the lot.''

On October 29, 1918, the defendant answered plaintiff's letter of October 10th, by writing to her in part as follows:

''We regret very much that you do not feel justified in going ahead and completing your contract. It is against the policy of the company to pay anything for quitclaim deed or releases of property when sold. It is bad precedent and contrary to good business. We would much rather have you go on and carry out your contract and acquire the property. If you do not care to do this, and will execute a quitclaim deed, we will prepare and send you one, and pay your $5. We have title to the lot and it is not necessary to do this, but we will do so in this instance.''

There was no further correspondence between the parties until March 26, 1919, when the defendant addressed a letter to the plaintiff, informing her that:

''The time for payment stipulated in your contract with us of date October 2, 1911, agreeing to convey the following described property: Lots 21, 22, Blk. 'C,' 1905 Add. having long since expired without such payments having been made, you are hereby notified that said contract is forfeit, canceled and voided and that your rights thereto are determined.''

The plaintiff promptly answered by addressing, through her attorney, to the defendant a letter, which is dated April 4, 1919, and, omitting the mere formal beginning and ending, reads as follows:

''In answer to yours of March 26th, to Miss Winnie Epplett of this place, in which you state that the contract entered into between yourself and Miss Epplett on October 2, 1911, for the sale of Lots 21, 22, in

Block C, East St. John's Addition, has been canceled and voided by you, and that Miss Epplett's rights thereto had been determined, will say that Miss Epplett accepts your rescission of said contract, and will make such rescission mutual, and hereby makes demand upon you for the sum of $356.50, the amount paid by her on said contract, together with legal interest from date of each payment by her upon said contract.

"Upon the payment of said sums, Miss Epplett will execute and deliver to you, a quitclaim deed upon payment of said sum.

"I trust that you will favor us with a check for the amount paid on the contract by Miss Epplett, together with legal interest by return mail. You may send the same by draft with quitclaim deed attached, if you wish, and Miss Epplett will execute the quitclaim deed in accordance with your directions upon receipt of the money."

Subsequently, but at some time in April, 1919, the plaintiff tendered a quitclaim deed to the defendant, and demanded a return of all payments made by her, together with interest; but the defendant refused to return any of the payments, and "stated that said contract had been forfeited by said plaintiff, and she had no further rights in the same." Upon filing the complaint, the plaintiff deposited a quitclaim deed with the clerk of the court for delivery to the defendant upon repayment, with interest, of the moneys received by the defendant.

The complaint alleges that the plaintiff paid $356.60 upon an agreement that when the full purchase price of $750 "should be fully paid" the defendant would convey the property by warranty deed to the plaintiff; that the defendant rescinded and repudiated the contract, notwithstanding the plaintiff "had fully complied with all the obligations and

covenants on her part to be performed under said contract and was not in default therein''; that plaintiff waived her right to specific performance and damages, and consented to the rescission; and that she tendered a quitclaim deed. and demanded the return of the moneys with interest.

The answer admitted that between October 1, 1911, and October 13, 1916, the plaintiff paid $358.50 in installments and on dates specified in the pleadings; that the moneys were paid under and pursuant to the written contract. After denying all of the allegations in the complaint not expressly admitted, the answer continues by setting out a ''further answer'' which is designed to serve as the foundation for equitable relief. In this ''further answer'' it is in effect alleged that the defendant owned the two lots; that the defendant and plaintiff executed the written contract for the sale of the lots; that no payments have been made except those already specified; that the plaintiff neglected to pay the taxes for the years 1915, 1916, 1917 and 1918; and that the defendant had no complete remedy at law. The answer concluded with a prayer for a decree foreclosing the contract.

The reply, besides denials, in effect declare that the defendant waived strict compliance as to time of payment; that after such waiver the defendant rescinded the contract and that the plaintiff agreed to the rescission.

On the day of the trial the court permitted the defendant to amend its answer by interlineation. The amendment is designated as a ''first, further and separate answer and defense,'' and consists of three paragraphs. In the first paragraph it is alleged that on October 10, 1918, the plaintiff abandoned the contract and refused to perform further and so notified

the defendant. The second paragraph in substance states that no payments have been made except $358.50; that the balance of the purchase price was unpaid, and that the defendant was ready, able and willing to convey upon payment of the purchase price. The third paragraph, according to the printed abstract reads thus:

"That thereafter said *plaintiff* elected to and did accept said abandonment."

The parties stipulated that any new matter in the amendment "should be deemed denied by the plaintiff without filing a written reply."

AFFIRMED. REHEARING DENIED.

For appellant there was a brief submitted over the names of *Mr. George P. Winslow* and *Mr. H. T. Botts.*

For respondent there was a brief prepared and presented by *Mr. George W. Gearhart.*

HARRIS, J.—The plaintiff argues that, on the facts as found by the court, she is entitled to a judgment. This argument proceeds on the theory that the defendant's letter of March 26th constituted a repudiation and rescission of the contract. Defendant meets this argument by saying that the letter of March 26th was an affirmance of the forfeiture clause in the contract and, therefore, was not a repudiation and rescission of the contract. Under the rules as established by prior precedents in this state, the question as to whether the letter of March 26th was a wrongful act and therefore amounted to a rescission, or was a rightful act and therefore amounted to an affirmance of a controlling provision in the

contract and effected a forfeiture of the moneys previously paid, depends upon whether the plaintiff was entitled to notice, tender of the deed and a reasonable time within which to pay.

1, 2. It will be observed that, although time is made the essence of the contract, the forfeiture provision is not so worded as to make it self-executing; for the contract does no more than to give the defendant "the option to declare the amount paid thereon forfeited": *Maffet* v. *Oregon & Cal. R. Co.,* 46 Or. 443, 454 (80 Pac. 489); *Higinbotham* v. *Frock,* 48 Or. 129, 131 (83 Pac. 536, 120 Am. St. Rep. 796); *Kemmerer* v. *Title & Trust Co.,* 90 Or. 137, 144 (175 Pac. 865). The contract does not by force of its own terms automatically work a forfeiture upon failure to pay an installment, but it merely gives the defendant the right to elect that it will declare a forfeiture; and hence, in order to have produced a forfeiture, the defendant must have exercised its right by electing to declare a forfeiture. The right to declare a forfeiture can, when arising out of contracts like the one presented here, be exercised either at or after the maturity of any installment; but, whether exercised at or after maturity, the right does not exist and cannot be lawfully exercised unless reasonable notice has been previously given: *Higinbotham* v. *Frock,* 48 Or. 129, 131 (83 Pac. 536, 120 Am. St. Rep. 796); *O'Conner* v. *Hughes,* 35 Minn. 446 (29 N. W. 152). Since contracts like the one here are not self-executing, the law by implication introduces into such contracts a provision that the right of forfeiture shall be exercised only after first giving notice for a reasonable period of time, or rather, speaking figuratively, the invisible and omnipresent hand of the law writes such a provision into the contract; and, therefore, the

right to forfeit cannot be fully exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser fails to pay within the time fixed by the notice. The defendant did not give any notice to the plaintiff before the maturity of any installment. Nor did the defendant give any notice after the maturity of any installment, except the letter of March 26, 1919; but since that letter is itself a declaration that a forfeiture is then effected, rather than a notice that a forfeiture will be effected in the future unless payment is made within a prescribed time, it necessarily follows that the letter of March 26th constituted a breach of the implied stipulation to give reasonable notice, and amounted to a rescission of the contract, and hence enabled the plaintiff also to rescind, thus producing a mutual rescission, unless it can be further said that the plaintiff waived her right to notice. If the record involved only three facts: (1) the failure to pay at maturity; (2) the defendant's letter of March 26th; and (3) the plaintiff's letter of April 4th, the conclusion would be that there was such a mutual rescission as entitles the plaintiff to recover: *Maffet* v. *Oregon & Cal. R. Co.*, 46 Or. 443 (80 Pac. 489); *Cornely* v. *Campbell*, 95 Or. 345 (186 Pac. 563, 187 Pac. 1103).

3. But there are other facts recited in the record, and, among the other facts, is the important one that the plaintiff wrote the letter of October 10th. This letter constituted an abandonment of the contract. It is true that she expressed the hope, and possibly the expectation, that some of the moneys would be repaid to her; but the fact remains that she plainly declared that she would make no more payments, and that she "thought this the quickest way to end the matter." The law does not require vain perform-

ances or idle ceremonies: *Southern Pac. Co.* v. *Siemens,* 77 Or. 62, 68 (150 Pac. 290). By declaring that she abandoned the contract, the plaintiff waived her right to notice, and thus enabled the defendant to exercise its then ripened right of forfeiture; for to require a notice after such abandonment would have been a mere idle ceremony: *Mitchell* v. *Hughes,* 80 Or. 574, 584 (157 Pac. 965); *Kemmerer* v. *Title & Trust Co.,* 90 Or. 137, 146 (175 Pac. 865). The letter of March 26th constituted the employment of the remedy prescribed by the contract, and operated as an affirmance, not a repudiation, of the contract: *Stennick* v. *J. K. Lumber Co.,* 85 Or. 444, 478 (161 Pac. 97, 166 Pac. 951); 27 R. C. L. 625.

4. The plaintiff contends that the defendant was obliged to tender a deed before it could rightfully declare a forfeiture. Where a land sale contract provides for the payment of the price in installments and there has been a failure to pay an intermediate installment, the vendor is not, under a contract like the one here, required to tender a deed in order to be entitled to declare a forfeiture on account of the failure to pay such intermediate installment. Where, however, there is a default in the final payment, the situation is different; for the reason that the obligation to pay the final installment and the obligation to deliver a deed are concurrent obligations.

5. The unpaid installments were overdue when the defendant wrote the letter of March 26th declaring a forfeiture, and therefore we may assume that all the unpaid and overdue installments should be combined and treated as a single sum which was then due as a final payment. We may further assume that, if the plaintiff had done nothing except fail to pay, the defendant would have been obliged to tender a deed be-

fore it could have rightfully declared a forfeiture. But the plaintiff did more than merely fail to pay; she expressly abandoned the contract; and, for the same reason that her abandonment of the contract operated as a waiver of her right to notice, the plaintiff's act of abandonment relieved the defendant from the necessity of going through the formality of tendering a deed.

6, 7. The plaintiff insists that she is entitled to a judgment on the pleadings, on the theory that the allegation: "That thereafter said *plaintiff* elected to and did accept said abandonment," being the third paragraph of the amendment interlined in the answer, is equivalent to an allegation of mutual abandonment and rescission. Although we have quoted the third paragraph of the amendment exactly as we find it in the printed abstract, we shall assume that a typographical error accounts for the presence of the word "plaintiff" instead of the word "defendant." The record does not inform us whether the plaintiff asked the trial court for a judgment on the pleadings. For aught that appears in this record there was no motion of any kind, nor any demurrer filed in the court below; and, hence, the answer must be construed most favorably to the defendant. The answer itself does not tell us how or in what manner the defendant "accepted" the abandonment, although it does affirmatively state that "said plaintiff without right and without the consent of said defendant elected to and did abandon said contract." The pleadings do not give any information about the letters; the findings of fact are the sources of our information concerning the correspondence. The answer does not even allege that the defendant declared a forfeiture. If the record consisted of nothing but the complaint and an-

swer, or if the reply had admitted the third paragraph of the amendment, there would be substantial reason for saying that paragraph 3 of the amendment was equivalent to an admission by both parties that they had abandoned the contract and that they thereby effected a rescission of it. Instead of admitting paragraph 3 of the amendment, the plaintiff denied it, and thus raised an issue, with the result that the plaintiff is in no position now to ask for a judgment on the pleadings; for denials must ordinarily be tried on the evidence: *Heatherly* v. *Hadley,* 2 Or. 269, 273; *Willis* v. *Holmes,* 28 Or. 265, 268 (42 Pac. 989); *State* v. *West,* 74 Or. 112, 119 (145 Pac. 15). The defendant argued that the evidence explained the meaning of paragraph 3, and that "so far as the defendant accepted the abandonment, it did so by declaring a forfeiture in its letter of March 26, 1919." If then we try the issue raised by the denial of paragraph 3 of the amendment on the evidence, as we must, we find that by the letter of March 26th the defendant declared a forfeiture of the contract and it did so by invoking a provision in the contract and thus affirmed rather than abandoned it. The answer as amended is not a model pleading; and yet, because of the denial made by the plaintiff and the evidence concerning the issue raised by the denial, our conclusion is that the plaintiff is not entitled to a judgment on the pleadings.

The judgment is affirmed.            AFFIRMED.

Denied March 8, 1921.

PETITION FOR REHEARING.

(194 Pac. 461.)

On petition for rehearing.        DENIED.

*Mr. George P. Winslow* and *Mr. H. T. Botts,* for the petition.

*Mr. George W. Gearhart, contra.*

In Banc.

HARRIS, J.—The plaintiff earnestly contends in a petition for a rehearing that the conclusion expressed in the original opinion cannot be logically supported by the statement of the facts.

The idea dominating the original opinion ·is that the letter written by the plaintiff to the defendant on October 10, 1918, constituted an abandonment of the land sale contract, and also operated as a waiver of the vendee's right to a notice of forfeiture as well as her right to a tender of a deed, and that the letter of March 26, 1919, instead of being an abandonment of the contract or a rescission of it by the defendant, was in truth an exercise of the ripened right of forfeiture, and was, therefore, equivalent to a performance of the contract.

The plaintiff renews her contention that the two letters, when construed together and considered in the light of the defendant's letter of October 29, 1918, effected a rescission as distinguished from a forfeiture. Although we gave to this contention careful consideration before and at the time of the preparation of the original opinion, we have again consid-

ered the subject; but we find ourselves unable to agree with the plaintiff. In our view the letter of October 10th was an abandonment of the contract, and the letter of March 26th was an exercise of a matured right of forfeiture.

But the plaintiff argues that there is no pleading to support a judgment based upon a forfeiture, her contention being that the amendment which was written into the answer at the time of the trial is not equivalent to an allegation of forfeiture. Before proceeding with an examination of the argument advanced by the plaintiff we shall dispose of another contention urged by her by conceding for the purposes of this case that such other contention, being the one last mentioned, is correct. It is said by the plaintiff, on the authority of *Webb* v. *Heintz,* 52 Or. 444, 447 (97 Pac. 753), that her denials of the averments in the amended answer do not preclude her from relying upon such averments as admissions by the defendant. In order that the plaintiff's contention may be viewed in a light most favorable to her, we may assume for the purposes of the present discussion that the averments found in the amended answer, even though denied by a reply, must in this case, notwithstanding there may be distinguishing circumstances surrounding it, be treated as admissions by the defendant. In other words, if the amended answer alleges an abandonment by the plaintiff and an acquiescence by the defendant, the defendant will be deemed to have admitted a rescission. We now return to a consideration of the amended answer to ascertain whether it contains any admission of acquiescence.

8. As pointed out in the original opinion, the amended answer does not in terms allege that de-

fendant declared a forfeiture. In other words, the defendant does not in its pleading use the word "forfeit," or the word "forfeiture." However, the third paragraph of the amendment does use the words "elected to and did accept said abandonment." Repeating what was said in the original opinion, if the record consisted of nothing but the complaint and amended answer, or if the reply had admitted the third paragraph of the amended answer, then there might be some reason for saying that if the plaintiff had, when in the Circuit Court, moved for a judgment on the pleadings, her motion could possibly have been allowed on the theory that the third paragraph of the amendment amounted to an allegation of "acquiescence" by the defendant. But, so far as the record discloses, no attack was made on the answer by motion or demurrer or otherwise, nor, indeed, is there even so much as an intimation in the record that the plaintiff asked for a judgment on the pleadings at any time before coming to the appellate court; and because of this condition of the record the amended answer must now, under the universally accepted and established rule of construction, be construed most favorably for the defendant. The answer does not tell us how the defendant "did accept" the abandonment; the pleading merely states that the defendant "did accept said abandonment." The question then is one of construction. What is the construction to be placed upon the word "accept"? The plaintiff claims that the term must be held to mean "acquiesce"; the defendant claims that it means that the defendant acted on the abandonment by declaring a forfeiture, and in that sense "did accept the abandonment." If one adopted the construction which is more favorable to the defendant, we cannot say that

it means "acquiesce," but we must say that it should receive the meaning ascribed to it by the defendant. This construction prevents the plaintiff from falling into an inconsistent position. The complaint is based upon the theory of abandonment by the plaintiff and acquiescence by the defendant. If the word "accept" as used in the answer is construed to mean acquiesce, then we find the plaintiff in effect alleging acquiescence in her complaint and denying acquiescence in her reply, for it must be remembered that the plaintiff denied the third paragraph of the amended answer. If it be said that this is a strained construction of the word "accept," the answer is that the plaintiff herself has used the word "accepted" in exactly the same sense in her original brief in support of her petition for a rehearing. It must be remembered that the plaintiff has from the beginning consistently argued that the defendant's letter of March 26th was not a declaration of forfeiture, and in the course of her argument upon this phase of the controversy she has used the word "accepted" in the same sense as the defendant now gives to the word "accept" in the amended answer. In her original brief the plaintiff states:

"Even if appellant did repudiate the contract by her letter of October 10, 1918, unless it was accepted by the respondent and appellant relieved from her obligation, it certainly would have no effect, as the contract would be still in force and the pleadings in this case clearly show that it was never accepted by the respondent in this case."

In her brief submitted in support of her petition for a rehearing plaintiff says:

"Notwithstanding all that has been said about the fact of the forfeiture not being in this case, does this court mean to hold that the letter of October 10th

was an abandonment of the contract by the plaintiff when it was not accepted by defendant?"

Again, in the same brief the plaintiff declares:

"The contract was still in force, and even though it was assumed that plaintiff had attempted to abandon the contract, there is nothing in the evidence to show that the abandonment was accepted, and that the position of the parties in regard to the contract was in any manner changed on March 26th."

Moreover, the findings of fact tell us how the defendant "did accept," for they inform us that the defendant accepted by declaring a forfeiture.

We repeat that the amended answer upon which the action was tried is not a model pleading; but, in the absence of a timely attack in some form, the pleading is sufficient to sustain a judgment rendered on the theory of forfeiture.

9, 10. The original opinion attempts to epitomize the pleadings, and as a part of the summary it is explained that the answer contains "a further answer" in which the defendant avers that it owned the two lots; that the parties executed the land sale contract; that no payments have been made other than as specified; that the plaintiff failed to pay taxes; and that the defendant was without a complete remedy at law; and upon these allegations the defendant prayed for a decree foreclosing the contract. In her petition for a rehearing the plaintiff says that the original opinion overlooks this phase of the answer. She argues that the prayer for equitable relief is inconsistent with the defense of forfeiture; and, furthermore, she urges that this condition of the amended answer "was one of the main things relied upon by the appellant, and the same is not even mentioned by the

court in its opinion, except as in its statement of fact.''

Under the heading of ''Points and Authorities'' the plaintiff submits six points in her original brief, and yet in not one of these points is there any reference, directly or indirectly, to that feature of the amended answer which asked for equitable relief. Under the caption of ''Argument'' the plaintiff says in her original brief:

''The sole deciding question in this case on the findings of fact is whether or not the letter of the respondent to appellant dated March 26, 1919, and fully set forth in finding number VII, when accepted by the appellant, was a mutual rescission of the contract, having been cancelled and declared forfeited by respondent without notice to appellant, after strict compliance of the contract to make payments on her contract for two years after final installment had become due, would be a rescission of the contract, and when accepted by the appellant would constitute a mutual rescission.''

The prayer for equitable relief is referred to, however, several times in the plaintiff's original brief, and, as we read the brief, was used merely as an argument to refute ''any argument that the contract had been abandoned or forfeited by the parties prior to that time (the filing of the answer) * * .'' The plaintiff is of course in all fairness entitled to have every point raised by her fully considered, and no point can in fairness be ignored, unless it be one not necessary to a decision. The fact that the defendant prayed for equitable relief was not overlooked by the members of this court, but, upon the contrary, it was discussed and considered when examining the record, although it was not deemed necessary to discuss it as a point involved in the litigation.

As already explained, plaintiff takes the position that she is entitled to a judgment on the facts on the theory that the letters show a mutual rescission; but as previously stated, we cannot concur with the plaintiff. Her next contention is that she is entitled to a judgment on the pleadings, and this contention presents itself in two phases. The first phase involves the theory that the word "accept" appearing in the amended answer necessarily means "acquiesce," and therefore the answer in effect alleges that the defendant acquiesced in the plaintiff's abandonment, and by so doing brought about a mutual rescission; but for the reasons already explained we do not concur with the plaintiff. The second phase involves the notion that the answer pleads two inconsistent defenses; one, that of forfeiture, the other, that of foreclosure. The plaintiff argues that the defense of forfeiture necessarily implies a termination of the contract, while the prayer for foreclosure necessarily involves the idea of a presently subsisting contract. Notwithstanding there was no motion to strike the alleged inconsistent defenses from the answer, nor any motion to require the defendant to elect, we shall ignore the general rule that failure to move against inconsistent defenses operates as a waiver, and we shall assume, without deciding, that the plaintiff can now on appeal avail herself of every advantage that was open to her in the Circuit Court: 31 Cyc. 147, 717, 727.

It must be remembered that this is an action at law. When the defendant filed its answer it did so with the belief that even though a forfeiture had been effected, nevertheless it might be a debatable question as to whether or not the plaintiff still had some equity in the land which should be foreclosed

before the record title could be cleared. The trial court expressly found as a conclusion of law, "that the defendant is not entitled to foreclose in this action." The defendant did not appeal. The plaintiff contested the defendant's prayer for equitable relief, for she demanded the return of the payments made by her and nothing else. Forgetting for the moment that this is an action at law and not a suit in equity, and that the defendant's prayer for equitable relief was refused, and that the defendant did not bring that aspect of the case here by appealing from the refusal, and that the plaintiff has denied and contested the defendant's prayer for equitable relief on the theory that there was a rescission and therefore a termination of the contract, let us assume, without deciding, that the plaintiff is entitled to claim every advantage which might accrue to her in any circumstances by reason of the prayer for equitable relief. Furthermore, let it be supposed that, even now after a refusal to award equitable relief and neither party complaining of such refusal, in this action at law, just as in a suit in equity brought by a vendor to foreclose a land sale contract, the prayer for equitable relief made and denied in the Circuit Court involves the idea of a presently subsisting contract, and assumes that the vendee still has some equity in the land: *Flanagan's Estate* v. *Great Central Land Co.,* 45 Or. 335, 342 (77 Pac. 485); *Higinbotham* v. *Frock,* 48 Or. 129, 132 (83 Pac. 536, 120 Am. St. Rep. 796). Let it be supposed also that the defense of forfeiture, because of its inconsistency, must yield to the equitable defense or counterclaim of foreclosure, and the result is, we have a complaint alleging rescission and therefore a termination of the contract, and an answer asking for a foreclosure and

therefore implying a continuance of the contract; and in addition we find a reply denying any right of equitable relief, and therefore in effect denying a presently existing contract. The complaint and reply in substance declare that no contract now exists; the answer in substance on the theory of the plaintiff declares that a contract still subsists. Obviously, the plaintiff is not entitled to a judgment on the pleadings even though her reasoning be adopted. The findings do not aid the plaintiff, for they show an abandonment and a forfeiture. There is no finding showing a mutual rescission. The plaintiff seeks to recover on the ground of rescission. The pleadings do not admit a rescission; and to be entitled to a judgment on the pleadings the plaintiff must be able to show that the pleadings admit a rescission, or at least the answer admits a rescission. The findings of fact show a forfeiture. The letter of March 26th effected a forfeiture, and from that moment forfeiture was an accomplished fact; and a pleading impliedly admitting that the contract subsists does not by such implied admission convert a forfeiture into a rescission, nor an affirmance of the contract into a rescission of it.

It may be that as a condition precedent for the granting of equitable relief a court of equity would compel the defendant to waive the accomplished fact of forfeiture; but there would be no warrant for saying that such waiver produced a rescission of the contract. For the purpose of illustration, let it be supposed that a vendee, alleging a mutual rescission, brings an action to recover installments paid on a land sale contract, and the vendor pleads and proves a forfeiture and secures a judgment based upon the fact of forfeiture; and then let it be further supposed

that after the entry of such judgment, the vendor conceiving, whether correctly or mistakenly is immaterial, that in despite of the forfeiture the vendee still has some equity in the land, and on that account the vendor brings a suit to foreclose that supposed equity: Could it be claimed that the suit in equity to foreclose operated to change the forfeiture and judgment based upon it into a rescission of the contract by the vendor? The equity judge might say to the vendor:

"You must waive the forfeiture exercised by you and approved by the court in the action at law before you can have a decree of foreclosure in this suit in equity, because you yourself must do equity."

But the court would not and could not logically say to the vendor:

"By your suit in equity you have not only waived a forfeiture, but you have converted it into a rescission, thus entitling the vendee to recover the moneys paid to you."

The plaintiff is seeking to recover the payments made by her on the theory that the contract has been rescinded by both parties. The pleadings do not admit a rescission; and the moment we turn to the facts we find the letter of March 26th declaring a forfeiture. This letter is a fact which checkmates every move made by the plaintiff in her attempt to recover the moneys paid by her. If the cause were here on the amended answer with the defendant demanding equitable relief and the plaintiff not resisting the demand for equity, an entirely different situation would be presented. The plaintiff has at all times contested the prayer for equitable relief; the court refused to grant such relief, and the defendant does not now complain of such refusal.

We are unable to concur with the plaintiff's contentions, earnestly and ably presented by her counsel though they have been. The petition for a rehearing is denied.        AFFIRMED.  REHEARING DENIED.